54 N.J. Super. 509 (1959)
149 A.2d 260
ROSE MINKOV, T/A MINKOV STEEL & IRON WORKS, AMENDED AT THE TRIAL TO READ AARON MINKOV, T/A MINKOV STEEL & IRON WORKS, PLAINTIFF-APPELLANT,
v.
RELIANCE INSURANCE COMPANY OF PHILADELPHIA, A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1959.
Decided March 18, 1959.
*511 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Jack Rinzler argued the cause for appellant (Messrs. Feder & Rinzler, attorneys).
Mr. Richard Yale Feder argued the cause for respondent (Messrs. Hein, Smith & Mooney, attorneys).
*512 The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff appeals from a final judgment of the Passaic County District Court. Judgment was rendered by the trial court against Aaron Minkov and in favor of defendant at the close of plaintiff's case.
Aaron Minkov sought to recover from defendant the amount of a judgment entered against him and Rose Minkov individually and trading as Minkov Steel & Iron Works, in another action, plus counsel fees incurred by him in the defense of that action. His position is that the prior suit was cognizable under a policy of insurance issued to him by defendant and that its failure to defend that action or pay the sum of that judgment therefore entitled him to a recovery in the present action. Rose Minkov was the original plaintiff. However, prior to the occurrence which resulted in this suit, she had transferred the business to Aaron Minkov. At the trial, defendant consented to have Aaron Minkov substituted as plaintiff.
Defendant's contention is that the occurrence upon which the prior action was founded (1) was not an "accident" within the meaning of the insurance contract coverage; (2) the type of damage which occurred was one of the risks excluded from coverage under the insurance contract; (3) the named insured and the defendant in the original action were two separate and distinct entities, and the policy did not cover the defendant named in the original action. In any event, it is argued, if defendant is found liable, that liability should be restricted to one-half of the amount of the judgment and counsel fees.
On June 4, 1956 plaintiff, under a contract with the Town of West Orange, undertook certain iron and steel erection work in connection with the construction of a fire station. This work involved the installation of steel roof trusses. The brick walls which had theretofore been constructed by DiGirolamo Construction Co., Inc., under a separate contract, were not square and, because of that, it became necessary to exert pressure upon the rafters in order that they could be pulled into position and bolted. To accomplish *513 this result plaintiff's employees fastened a choker or steel chain around a column which was an integral part of the wall. In the course of the operation plaintiff's employees, under the direction of one Hendricks, superintendent, were alerted to watch to "make sure that there would be no damage to the wall." Hendricks testified that although he did not expect any damage to the wall, "you always try to prevent any damage, if there is a possible chance." He further stated that he believed the operation was thoroughly safe; that he "wouldn't have done it if I hadn't." The column was not damaged; however, when the two rafters were in place and bolted the wall developed a crack and was "pulled in." Hendricks testified that this was the first time in 28 years of work and experience that such a result had occurred. DiGirolamo was obliged to demolish and replace the wall.
DiGirolamo brought suit in the district court against Rose and Aaron Minkov individually and trading as Minkov Steel & Iron Works, seeking thereby to recover damages for the harm occasioned by the impairment of the wall. Notice of these facts and the summons and complaint, when served, were immediately forwarded to defendant (Reliance), with a request to defend the action, pursuant to the following provisions of the policy:

"Coverage B  Property Damage Liability:
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."
Reliance refused to undertake the defense of that suit on the ground that there was no obligation on its part under coverage B, above quoted, since the occurrence could not be construed as an "accident" within the meaning of the policy. DiGirolamo's complaint was dismissed involuntarily, without prejudice, by the trial court.
Thereafter, DiGirolamo undertook a second suit against Rose and Aaron Minkov in the same capacities. The summons *514 and complaint in the second suit were also forwarded to Reliance, with a request to defend. As in the first suit, and for the same reason, Reliance refused. Plaintiff engaged his own counsel and the matter proceeded to trial. Judgment was rendered against Rose and Aaron Minkov, individually and trading as Minkov Steel & Iron Works, in the sum of $608.90 damages and costs of suit. Reliance refused to pay said judgment and plaintiff thereupon filed the instant suit. At the close of plaintiff's case against Reliance, the trial judge, upon motion, entered judgment for defendant, bottoming the decision upon his conclusion that the damage to the wall was foreseeable by plaintiff and was, therefore, "not caused by accident."
The crux of plaintiff's argument is the meaning of "caused by accident." Both plaintiff and defendant admit that even though the means which caused the injury were voluntarily employed, the resulting injury could be considered as one occasioned by accidental means if, as a result of the act which preceded the injury, something unforeseen, unexpected and unusual occurred, which produced the injury. Cf. Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127 (1958); Korfin v. Continental Casualty Co., 5 N.J. 154 (1950). See also Shields v. Prudential Ins. Co. of America, 6 N.J. 517 (1951). Defendant argues that the damage to the brick wall was foreseeable, expected and not unusual and hence was not accidental.
On a motion for judgment at the conclusion of plaintiff's case the trial court cannot weigh the evidence but must accept as true all testimony that supports the view of plaintiff. Plaintiff is entitled to all legitimate inferences which may be drawn therefrom. Buchner v. Erie Railroad Co., 17 N.J. 283, 289 (1955).
Defendant's argument that the damage to the wall was not unsual  not accidental because foreseeable  alluding here to the dictionary definition of "accident" as an unforeseeable contingency  cannot prevail. Simply because the damage resulted from negligence, a concept which carries with it the element of foreseeability, does not deprive the occurrence *515 of its accidental nature. Although an intentional or willful tort would negative the existence of an accident an act attributable solely to negligence may be an accident. It cannot seriously be contended in the present case that the damage was intentional on the part of plaintiff's employees. To give the word "accident" the meaning for which defendant argues would manifestly defeat the purpose of the policy, which is to protect against liability in circumstances like those here present.
We conclude that what happened here was an "accident" within the meaning of the policy. In any event, in assaying plaintiff's proofs, especially the testimony of Hendricks, it is evident that the proofs raised a factual issue and it follows that the trial court erred in granting defendant's motion.
Defendant next argues that it is not liable, as the damaged wall falls within the provisions of an exclusionary clause of the policy, which reads:
"(1) Under Coverage B, with respect to Division 2 of the Definition of Hazards, to injury to or destruction of property arising out of the collapse of or structural injury to any building or structural injury to any building or structure due to excavation (including borrowing, filling or backfilling in connection therewith), tunneling, pile driving, cofferdam work, or caisson work, or to moving, shoring, underpinning, raising or demolition of any building or structure, or removal or rebuilding of any structural support thereof; * * *."
"Coverage B  Property Damage Liability" has already been quoted. Directly following that clause appears the following under "definition of hazard;"

"Division 2. Premises  Operations  Manufacturers and Contractors:
The ownership, maintenance or use of premises, and all operations occurring during the policy period which are necessary or incidental thereto, including accidents (except accidents due to misdelivery) which occur after completion or abandonment of operations, and arise out of pick-up or delivery operations or the existence of tools, uninstalled equipment and abandoned or unused materials."
We note that in correspondence between the parties, defendant denied liability only on the ground that there was *516 no "accident." However, at the trial it injected a further issue when it sought to escape liability under the terms of the exclusionary clause quoted. This clause, as quoted, excludes from coverage "injury to * * * property arising out of the collapse of or structural injury to any building or structural injury to any building or structure due to excavation * * *."
Defendant argues that the exclusionary clause concerns three types of injuries, (1) those arising out of the collapse of any building; (2) those arising out of a structural injury to any building; and (3) those due to excavation, etc., and that since the injury here involved is a structural injury to the building upon which Minkov was performing work, it does not come within the purview of the policy. In effect, defendant argues that since the injury to the fire station was of a structural nature it is excluded under the terms of the policy, which exclude injuries arising out of structural injury.
The clause, although admittedly confusing, is not susceptible of any such strained construction. The clause is susceptible, however, to two constructions, as follows:
(A) The purpose of the clause was two-fold, to exclude (1) "injury to * * * property arising out of the collapse of or structural injury to any building;" and (2) "structural injury to any building due to excavation, etc." We are not here concerned with the second listed exception.
The keystone of the construction of the first noted exception is "arising out of." Those words, as here employed, denote "originating from," "having its origin in," "growing out of," "flowing from." Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 154 A.L.R. 1088 (Sup. Ct. 1944); Red Ball Motor Freight v. Employers Mut. Liability I. Co., 189 F.2d 374 (5 Cir. 1951), or "due to," "resulting from."
The conclusion that "arising out of" is employed as a synonym for one of the quoted phrases is strengthened by insurer's subsequent use of the words "due to" in describing *517 the exception arising from excavation, etc. Used in that sense, the clause would read "* * * injury to property resulting from the collapse of or structural injury to any building."
To say that injury to property resulting from the collapse of or structural injury to a building is excluded from coverage, is a far different thing from saying that the collapse of or structural injury to a building is excluded from coverage. If the clause were to be read as defendant urges, it would encompass not only all injury to property resulting from the collapse of or structural injury to the fire station, but as well all structural injury to the fire station itself.
The policy was intended to insure against accidental damage to the building being constructed (the fire station) and to exclude, solely, incidental damage to other property resulting from the collapse of or structural injury to that building.
If this were not the intent of the clause, the second exception relating to "injury to any building due to excavation [etc.]" would be surplusage, as the first exception, under defendant's construction, would exclude all structural injury to the building being constructed, regardless of the means by which it was caused. This would, of necessity, include injury resulting from excavation.
In addition, the first exception refers to "property" and the second refers to "any building." The use of the words "any building" implies that "property" was not intended to include "any building." It is a fair inference that the insurer intended by its own selection of different and distinguishing language to differentiate between the objects injured. The second exception is patently inclusive of the building upon which work was being performed. Were "property" intended to be construed so as to include the building upon which work was being performed it would have been a natural mode of expression to have repeated that word. There would be no reason to substitute "any building" therefor. Insofar as the first exception is concerned, the phraseology of the entire clause shows an intent to use *518 "property" in a restrictive sense not inclusive of the building covered by the certificate of insurance.
(B) If defendant's interpretation were correct, so much of the clause as follows the third disjunctive "or" would be surplusage, since all "structural injury" was excepted by that which preceded that word. Such a construction would force the conclusion that all structural injury to the building upon which work was being performed was intended to be eliminated regardless of whether such injury was caused by excavation or otherwise. There would then have been no reason to incorporate the balance of the clause which commences with the words "or structural injury to any building or structure due to excavation."
Such a construction cannot be sustained, since the "due to excavation, etc." clause modifies all of that which precedes. It was the intent of the parties to exclude from the terms of coverage "injury to or destruction of property" and "injury to any building or structure" only where such injury was caused by excavation and the other undertakings specifically listed.
The injury here involved does not fall within either of the foregoing alternative constructions of the exclusionary clause.
In any event, any ambiguity in a policy is to be resolved in favor of the insured. Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599 (App. Div. 1956); Schneider v. New Amsterdam Casualty Co., 22 N.J. Super. 238, 243 (App. Div. 1952).
Defendant finally urges as his last point that since the DiGirolamo judgment was rendered against Rose Minkov and Aaron Minkov individually and trading as Minkov Steel & Iron Works, it is not liable, as the contract for insurance was with Aaron Minkov, trading as Minkov Steel & Iron Works.
There is no dispute that the act which caused harm was done by the servants of defendant's assured, i.e., Aaron Minkov, trading as Minkov Steel & Iron Works, in performance of his contract with the Town of West Orange. *519 Nor does defendant dispute that refusal to defend was based upon its conception of the occurrence and not upon the failure of DiGirolamo to properly name its assured. It is conceded that Rose Minkov was not a proper party in the DiGirolamo action because she had transferred the business to her husband, including the trade name, prior to the occurrence complained of. It is also argued that the DiGirolamo action was not against "two separate individuals, but only one legal entity," i.e., "Rose Minkov and Aaron Minkov, trading as Minkov Steel & Iron Works." Reference to the complaint in that action dispels this argument. The action there was against "Rose Minkov and Aaron Minkov, individually and trading as Minkov Steel & Iron Works." We hold that defendant's assured was a defendant in the DiGirolamo action and was entitled, under the insurance contract, to have defendant defend that action.
The fact remains that defendant was at all times, aware of the manner in which the complaint in the DiGirolamo suit was made out. It did not refuse to defend on this ground, nor did it object to the discrepancy; instead, it based its refusal to defend the DiGirolamo action solely on its conception of the meaning of the word "accident." Certainly, if defendant had denied coverage for the reason it now seeks to have this court accept, plaintiff could have promptly attended to the correction of the discrepancy. We do not believe that defendant should be allowed at this late date to take advantage of a technical error in pleading after it lulled plaintiffs into believing it did not object thereto. We have here nothing more than oversight in pleading, which can be corrected at any time by the court in which the DiGirolamo action was tried. Cf. Jones v. Gabrielan, 52 N.J. Super. 563, 573 (App. Div. 1958). Accordingly, the inadvertent reference to Rose Minkov should be ignored for the purposes of this appeal. Any other result would obviously be unjust.
Defendant urges, alternatively, under this point, that its liability would, in any event, be limited to only one-half of the sum of the judgment and reasonable attorney's fees, *520 because Aaron Minkov would have an enforceable right of action against his wife, who was the alleged joint tortfeasor and is his co-judgment debtor. As noted above, defendant concedes that Rose Minkov was not a proper party defendant in the DiGirolamo action. This is to say that she was not a joint tortfeasor and, hence, is not liable for the wrong occasioned. In addition, the right of contribution between joint tortfeasors arises only on the payment by one of a judgment for which both are responsible. N.J.S. 2A:53A-2. Minkov's right of contribution from a joint tortfeasor would not affect his liability to DiGirolamo for the full amount of the judgment and hence could not affect defendant's liability to pay under its contract. It could only be subrogated to the rights of its assured against his joint tortfeasors. Finally, Aaron Minkov would have no right to sue his wife and recover the excess paid over and above his pro-rata share of such judgment. Cf. Kennedy v. Camp, 14 N.J. 390 (1954).
Reversed and remanded for a new trial.