[No. B035518. Second Dist., Div. Five. July 31, 1989.]

INGLEWOOD RADIOLOGY MEDICAL GROUP, INC., et al., Plaintiffs and Appellants, v.
HOSPITAL SHARED SERVICES, INC., et al., Defendants and Respondents.

## COUNSEL

Nebenzahl & Kohn, James A. Kohn and Gerald S. Frim for Plaintiffs and Appellants.

Long & Levit, Joseph P. McMonigle and Glen R. Olson for Defendants and Respondents.

**OPINION**

**ASHBY, J.**—In this appeal we hold that an insurance policy for medical malpractice did not require the insurer to defend a wrongful termination lawsuit.

## FACTS

Radiologist Gail Portanova, M.D., was employed by appellant Inglewood Radiology Medical Group, Inc.[1] In March 1981, Dr. Portanova's employment with appellant was terminated. Thereafter, Dr. Portanova filed a lawsuit against appellant. Portanova's complaint alleged nine causes of action, all of which emanated from the allegation that her employment was wrongfully terminated. Centinela Hospital was also a named defendant. As against Centinela Hospital, Portanova claimed that her hospital privileges were wrongfully terminated and that she was falsely accused of numerous acts including dancing nude and being a drug addict. Without admitting liability, appellant settled the matter by paying Portanova $150,000. Appellant also expended $90,465.17 in legal fees.

Appellant was insured by respondent American Continental Insurance Company under a policy of medical malpractice insurance labeled, "Physicians, Surgeons & Dentists Professional Liability Insurance."[2] The policy required respondent to "indemnify the insured for all sums for which the insured must legally pay as damages because of injury arising out of the rendering or failure to render during the policy period *professional services* by the insured or by any person for whose acts or omissions the insured is legally responsible." (Italics added.) The policy defined "professional services" as "services performed in the practice of the profession of a physician, surgeon or dentist."

Appellant tendered the defense of the Portanova lawsuit to respondent. Respondent refused to defend alleging that the insurance policy did not cover claims for wrongful termination because the claim did not arise from the rendering of "professional services." Appellant brought this suit against

[1] Appellants Arthur F. Schanche, M.D., Jack L. Berman, M.D., Lawrence J. Cohen, M.D., Stanford B. Trachtenberg, M.D., Sidney D. Zucherman, M.D., and Michael Shaub, M.D., are all member physicians of appellant Inglewood Radiology Medical Group, Inc., a professional corporation. The group contracts with various hospitals to provide radiological services. For ease of reference, "appellant" will be utilized to include all appellants.

[2] Respondent MMI Companies, erroneously sued as "MMI/ACIA," was an insurer affiliated with respondent American Continental Insurance Company. Respondent Hospital Shared Services, Inc., was a claims administrator for American Continental Insurance Company. For ease of reference all respondents will be referred to as "respondent."

respondent claiming it breached its contractual obligations in failing to provide a defense and in failing to pay the settlement of the Portanova wrongful termination lawsuit. Respondent's summary judgment motion was granted upon the ground that respondent had no such contractual obligation in that a decision to fire an employee did not constitute "professional services." Judgment was entered in favor of respondent, from which appellant appeals. We affirm.

## DISCUSSION

This matter comes to us after the granting of a summary judgment motion. "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." (Code Civ. Proc., § 437c, subd. (c); *Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 976 [243 Cal.Rptr. 277].) ■ We apply this principle, examine only the facts presented below, and independently determine their effect as a matter of law. (*Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].) We also review the trial court's reasoning supporting the decision, but we are not held to its rationale. (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

■ Appellant asserts that the contract of insurance obligated respondent to pay for damages appellant incurred in resolving the Portanova wrongful termination lawsuit. We disagree.

■ "When the terms of an insurance policy are plain and explicit, the court will not indulge in forced or strained construction to impose liability." (*Watamura* v. *State Farm Fire & Casualty Co.* (1988) 206 Cal.App.3d 369, 371 [253 Cal.Rptr. 555].) ■ In construing the terms of a professional liability policy, we look to their ordinary and normal use in that profession. (*Geddes* v. *Tri-State Ins. Co.* (1968) 264 Cal.App.2d 181, 184 [70 Cal.Rptr. 183].)

The "Physicians, Surgeons & Dentists Professional Liability" insurance policy obligated respondent to indemnify appellant for all sums appellant became obligated to pay "because of injury arising out of the rendering [of] . . . professional services," i.e., those "services performed in the practice of the profession of a physician, . . ."[3]

---

[3] We also note that for purposes of the Medical Practice Act (Bus. & Prof. Code, § 2000 et seq.), " 'professional' relates to the art and science of medicine and surgery and to such other

In arguing that respondent was obligated to pay for the resolution of the Portanova wrongful termination lawsuit, appellant suggests that "professional services" were rendered because only a trained physician, in exercising the physician's expertise, could determine to fire a physician employee. However, even though a physician's expertise may be required to properly evaluate a particular physician's performance as an employee, the decision to terminate that employee is not "rendering professional services." Rather, the decision to terminate employment is a business or administrative decision. In making such a decision, the physician is acting as an employer and not as a "physician rendering services."[4] Thus, defending Portanova's lawsuit for wrongful termination was not covered by the malpractice policy. (*Transamerica Ins. Co.* v. *Sayble, supra,* 193 Cal.App.3d 1562 [malpractice carrier not responsible for lawsuit filed by one law partner against others to resolve business conflicts]; *Blumberg* v. *Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286 [238 Cal.Rptr. 36] [malpractice carrier not responsible for lawsuit by one law partner against another]; cf. *Forrester* v. *White* (1988) 484 U.S. 219 [98 L.Ed.2d 555, 108 S.Ct. 538] [judge's decision to dismiss an employee is not "judicial" but rather administrative.)

In Portanova's complaint she alleged that slanderous words, charges of drug abuse and dancing nude, were made with the intent of having her fired. Relying on *Geddes* v. *Tri-State Ins. Co., supra,* 264 Cal.App.2d 181, appellant alleges that slander charges are covered by malpractice coverage. However, in *Geddes* the insurance company was responsible for slander lawsuits because the alleged slanderous comments were made during the practice of medicine. In *Geddes* the allegedly slanderous comments were made during a consultation with another physician.[5] Here, however, appellant alleged the purported comments were said during the termination process. Contrary to appellant's assertion, the character of this act was an administrative one rather than rendering professional services.

arts and sciences as may be included within the field of medicine and surgery." (Bus. & Prof. Code, § 2033.)

[4] In interpreting the contract, the trial court held that "rendering services" meant "rendering services *to others.*" While some professional malpractice policies contain this language (e.g., *Transamerica Ins. Co.* v. *Sayble* (1987) 193 Cal.App.3d 1562, 1566-1567 [239 Cal.Rptr. 201]), there are many situations where a medical practitioner could be rendering professional services, but not rendering those services directly to a patient. (E.g., *Geddes* v. *Tri-State Ins. Co., supra,* 264 Cal.App.2d 181 [consulting with another physician].) In independently evaluating and interpreting the facts (*Bonus-Built, Inc.* v. *United Grocers, Ltd., supra,* 136 Cal.App.3d at p. 442), we agree that the malpractice contract in question did not apply to a wrongful termination lawsuit brought by Portanova, an ex-employee. We need not draw the distinction suggested by the trial court.

[5] *St. Paul Fire & Mar. Ins.* v. *U.S. Fire Ins. Co.* (3d Cir. 1981) 655 F.2d 521 is also inapplicable. In *St. Paul,* the insurance policy covered "professional services . . . as a member of a . . . professional board or committee of a hospital . . . ." The court held that defamatory statements said during a hospital board meeting were covered by the policy.

In that there was no potential for coverage, and the insured (appellant) could not reasonably expect coverage, respondent also had no duty to defend. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-277 [54 Cal.Rptr. 104, 419 P.2d 168]; *Blumberg* v. *Guarantee Ins. Co.*, *supra*, 192 Cal.App.3d at p. 1292.)

The judgment is affirmed.

Lucas, P. J., and Boren, J., concurred.