967 F.2d 587
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David LIRA, Plaintiff-Appellant,
v.
CHICAGO INSURANCE COMPANY, Defendant-Appellee.
 No. 91-15350.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1992.
Decided June 29, 1992.
 
 Before GOODWIN, SCHROEDER and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This case addresses a professional malpractice insurer's duty to defend its insured against a suit by a former employer and current competitor alleging wrongful solicitation of clients and slander. The district court granted summary judgment against David Lira on the ground that his business dispute with Charter and Company (Charter) did not fall within the scope of coverage provided by Chicago Insurance Company's (Chicago's) professional liability policy. We have jurisdiction and we affirm.
 
 
 3
 * Lira worked for Charter for approximately one and a half years before striking out on his own. On May 2, 1989, shortly after setting up his own vocational rehabilitation business in his home, Lira obtained a professional liability insurance policy from Chicago. Lira provided vocational rehabilitation services to approximately 20 of the 34 injured workers he had counseled when working for Charter. Client Michael Reed recalled Lira advising him during a consultation not to seek treatment at Charter, saying that "you're going to get stuck with two dumb women, either a dumb blonde or Jamie [Charter]."
 
 
 4
 Charter sued Lira in August, 1989, alleging, inter alia, that he wrongfully solicited and furnished services to Charter's former clients and that he slandered Charter. Chicago and Lira do not dispute that much of the conduct that Charter complains of occurred after the professional liability policy was in force. Chicago refused Lira's tender of defense on the ground that it had no obligation to him. Lira and Charter eventually settled. Lira seeks the fees and costs he expended in defending Charter's lawsuit and unspecified damages for Chicago's alleged breach of its duty of good faith and fair dealing.
 
 II
 
 5
 We review a grant of summary judgment de novo. Viewing the evidence in a light most favorable to the nonmoving party, we determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). If a nonmovant bears the burden of proof on an issue, summary judgment is appropriate when he fails to make a showing sufficient to establish an essential element of his case. The movant need not negate the essential element. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When the movant carries its burden by pointing to a lack of support for essential elements upon which the nonmovant bears the burden of proof, the nonmovant must come forward with " 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by opinion). We view the record taken as a whole to determine whether a genuine issue exists. Id. at 587.
 
 
 6
 An insured must show that his claim falls within the scope of basic coverage under the policy. Clauses identifying coverage are interpreted broadly. Garvey v. State Farm Fire & Casualty Co., 48 Cal.3d 395, 770 P.2d 704, 710, 257 Cal.Rptr. 292 (1989). The duty to defend is broader than the duty to indemnify. Aim Ins. Co. v. Culcasi, 229 Cal.App.3d 209, 280 Cal.Rptr. 766, 777 (1991). An insurer has a duty to defend if it ascertains facts (from its insured, a complaint or other sources) that potentially yield liability under the policy. Gray v. Zurich Ins. Co., 65 Cal.2d 263, 419 P.2d 168, 176-77, 54 Cal.Rptr. 104 (1966). The nature and kind of risk covered limits the duty to defend.[1] In Gray, the insurer had to defend because an ambiguous exclusionary clause did not contradict the insured's reasonable expectation of coverage. However, "[w]here the scope of basic coverage creates no potential liability under the policy, the courts may not use a strained construction to impose a liability upon an insurer that it has not assumed." Dyer v. Northbrook Property & Casualty Ins. Co., 210 Cal.App.3d 1540, 259 Cal.Rptr. 298, 302 (1989). Lira thus bears the burden of showing that a genuine issue exists whether Charter's claim potentially falls within the broadly construed meaning of Chicago's coverage clauses.
 
 III
 
 7
 We recently explained that under California law the first step in analyzing an insurance contract is determining whether the contested policy provision is clear and unambiguous. If the policy language is unclear, we then consider whether the insured has a reasonable expectation of a defense. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1365-66 (9th Cir.1991). The presence of some noncovered claims in Charter's complaint does not absolve Chicago of its duty to defend if Charter also alleges some covered claims. See California Union Ins. Co. v. Club Acquarius, 113 Cal.App.3d 243, 169 Cal.Rptr. 685, 686-87 (1980).
 
 Chicago agreed
 
 8
 [t]o pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of Injury to which this insurance applies, caused by an Incident which occurs during the policy period.
 
 
 9
 Insuring Agreement I (ER 44). The policy defines the bolded term Injury as follows:
 
 
 10
 "Injury" includes, but is not limited to, bodily injury, property damage, personal injury and emotional trauma or distress....
 
 
 11
 Definitions (ER 46) (emphasis added). Effectively, the clause "Injury to which this insurance applies" provides no limitation on liability.[2] Chicago thus must rely on the definition of "Incident" to limit the scope of coverage provided.
 
 
 12
 "Incident" means any act or omission in the furnishing of services by the Insured in the professional occupation shown in the declarations....
 
 
 13
 Definitions (ER 46). Lira's professional occupation shown in the declarations is "Rehab. Professions--Emp--S/E." Declarations (ER 44). The parties agree that this notation indicates that Lira is a self-employed rehabilitation professional.
 
 
 14
 "An insurance policy, like any other contract, must be construed in its entirety, with each clause lending meaning to the other." Producers Dairy Delivery Co. v. Sentry Ins. Co., 41 Cal.3d 903, 718 P.2d 920, 928, 226 Cal.Rptr. 558 (1986) (internal quotation omitted). In determining whether a policy provision is clear and unambiguous, "words in an insurance policy must be read in their ordinary sense." Id. at 925. "A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable." Id. at 924-25 (internal quotations omitted). "[A] finding of ambiguity in policy language cannot be based on an unreasonable misunderstanding on the part of the insured." Id. at 925. The existence of ambiguity is a question of law unless contract construction turns on the credibility of extrinsic evidence. Delgado v. Heritage Life Ins. Co., 157 Cal.App.3d 262, 203 Cal.Rptr. 672, 676 (1984). For Lira to be covered, Chicago's policy unambiguously requires that the act or omission creating exposure must result from the furnishing of professional rehabilitation services.
 
 
 15
 We succinctly stated the rule on professional malpractice liability[3] in a case under Washington law: "To be covered, the liability must arise out of the special risks inherent in the practice of the profession." Bank of Cal. v. W.H. Opie & Co., 663 F.2d 977, 981 (9th Cir.1981) (citing 7A John A. Appleman, Insurance Law and Practice §§ 4502, 4503, at 299-300, 304-07 (Walter F. Berdal rev. ed. 1979)) (holding that policy covered mismanagement of loan proceeds where insured's business was being a financial middleman). California appellate cases have stated the rule in various ways. Inglewood Radiology Medical Group v. Hospital Shared Servs., 217 Cal.App.3d 1366, 266 Cal.Rptr. 501, 503 (1989) ("[E]ven though a physician's expertise may be required to properly evaluate a particular physician's performance as an employee, the decision to terminate that employee is not 'rendering professional services.' "); Hollingsworth v. Commercial Union Ins. Co., 208 Cal.App.3d 800, 256 Cal.Rptr. 357, 361 (1989) ("... look not to the title or character of the party performing the act, but to the act itself.... 'professional services' refer[red] to the technical work performed....") (internal quotations omitted); Transamerica Ins. Co. v. Sayble, 193 Cal.App.3d 1562, 239 Cal.Rptr. 201, 205 (1987) ("[T]here must be malpractice if professional liability coverage is to apply."); Blumberg v. Guarantee Ins. Co., 192 Cal.App.3d 1286, 238 Cal.Rptr. 36, 39 (1987) ("[A]t the time Blumberg made the alleged misrepresentations, he was not rendering professional services 'for others' nor acting in his 'capacity as a lawyer.' Rather, Blumberg was acting in his capacity as Zommick's law partner....").
 
 
 16
 Securing clients and competing in the marketplace, even unlawfully, are not special risks inherent in the practice of the rehabilitation profession. Malicious slanderous statements made while soliciting business are not part of the rendering of professional rehabilitation services. Lira has shown no genuine issue relating to coverage under Chicago's policy.
 
 IV
 
 17
 The district court's grant of summary judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The legality of the insured's conduct does not limit the duty to defend. Although an insurer may not indemnify its insured for certain illegal acts, it may still defend. Gray, 419 P.2d at 177
 
 
 [2]
 Lira makes much of the fact that Chicago's policy explicitly includes libel and slander in its definition of personal injury. Blue Brief 13-15; Gray Brief 7-9. These words of inclusion mean little, however, in light of the effectively unlimited scope of the term "injury."
 
 
 [3]
 None of the coverage clauses in the cases upon which we rely vary materially from those in Lira's policy