294 N.J. Super. 463 (1996)
683 A.2d 834
CARL J. RECORDS, M.D., PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
AETNA LIFE & CASUALTY INSURANCE, DEFENDANT-CROSS-RESPONDENT, AND MEDICAL INTER-INSURANCE EXCHANGE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 1996.
Decided October 25, 1996.
*464 Before Judges LONG, SKILLMAN and CUFF.
Robert D. Rhoad argued the cause for appellant (Dechert, Price & Rhoads, attorneys; Ezra D. Rosenberg and Mr. Rhoad, on the brief).
*465 James A. Waldron argued the cause for respondent-cross-appellant.
Michael B. Oropollo argued the cause for cross-respondent (Harwood Lloyd, attorneys; Mr. Oropollo, of counsel; Sean P. Mulligan, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to determine the scope of the coverage provided under a malpractice policy which insures a physician for liability from "injury arising out of the rendering of professional services."
Plaintiff is a doctor who served as the primary care physician to approximately 100 residents of the Crest Haven Nursing Home in Cape May Courthouse. On April 12, 1991, at a time when plaintiff was absent from the nursing home, Dolores P. Koch, a registered nurse, noticed that one of plaintiff's patients seemed to be in acute distress. After first unsuccessfully attempting to telephone plaintiff and his substitute physician, Koch consulted with one of her supervisors, who told her to transfer the patient to a hospital. While Koch was waiting for the ambulance to transport the patient, plaintiff arrived at the nursing home. Upon learning that the nursing staff had decided to transfer his patient to a hospital without consulting him, plaintiff became very angry. He went to Koch's work station, grabbed her arm and steered her into the nurses' lounge. According to Koch, plaintiff pointed a finger in her face, while continuing to hold her arm and walk forward, and began screaming at her. Plaintiff told Koch that the patient was chronically ill, that nothing could be done for him in the hospital and that she would be held personally responsible for his hospital bill. As this encounter escalated, Koch continued to retreat, eventually backing into the edge of a table and bending over backwards. According to Koch, this movement caused a serious injury to her back, including a herniated disc. Koch also alleges that plaintiff slapped her on the shoulder which caused a further injury.
*466 Koch subsequently filed a personal injury action against plaintiff, alleging both negligence and assault and battery and seeking compensatory and punitive damages. Plaintiff demanded that defendant Medical Inter-Insurance Exchange (MIIX), with which he had a medical malpractice policy, and defendant Aetna Life and Casualty Insurance Company (Aetna), with which he had a homeowners policy, provide a defense and indemnify him for any judgment that might be entered. Both insurers denied coverage, prompting this declaratory judgment action.
The case was brought before the trial court by cross-motions for summary judgment. The court concluded in a written opinion that Aetna was entitled to summary judgment because the incident fell within the "business pursuits" exclusion of its homeowners policy. However, the court granted plaintiff summary judgment against MIIX, concluding that the incident and Koch's alleged injuries "arose out of the rendering of professional services." The court entered an order requiring MIIX to defend the action and to indemnify plaintiff for any judgment for negligence that might be entered. The order further provided that MIIX had no obligation to indemnify plaintiff for punitive damages and that MIIX would be required to indemnify plaintiff for a judgment for assault and battery "only if a jury determines that [plaintiff's] alleged intentional acts resulted in improbable and unintentional consequences to Nurse Koch."[1]
*467 MIIX appeals from the order requiring it to defend and indemnify plaintiff and plaintiff appeals from the summary judgment in favor of Aetna. We affirm.
The medical malpractice policy MIIX issued to plaintiff provides coverage for "injury arising out of the rendering of or failure to render ... professional services" and defines "professional services" to mean "services requiring specialized knowledge and mental skill in the practice of the profession." There is no reported New Jersey decision construing this policy language.[2] Therefore, we must consider prior decisions in this State construing similar language in other kinds of insurance policies as well as decisions in other jurisdictions construing this standard provision of a medical malpractice policy.
Preliminarily, we note that "[w]hen members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations." Sparks v. St. Paul Ins. Co., 100 N.J. 325, 337, 495 A.2d 406 (1985) (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961)). Consequently, any ambiguity in an insurance policy must be resolved in the insured's favor. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992).
The practice of medicine includes the diagnosis of a patient's condition and the determination of whether that condition requires *468 hospitalization. Thus, if plaintiff himself had decided to transfer his patient to a hospital and the patient or the patient's family had filed a claim based upon that decision, plaintiff clearly would have been entitled to coverage under the MIIX policy for malpractice in "the rendering of professional services."
However, the MIIX policy provides coverage not only for claims of malpractice in the direct "rendering of professional services" but also for any other claim "arising out of" the rendering of professional services. The phrase "arising out of" has been defined broadly in other insurance coverage decisions to mean conduct "originating from," "growing out of" or having a "substantial nexus" with the activity for which coverage is provided. Westchester Fire Ins. Co. v. Continental Ins. Cos., 126 N.J. Super. 29, 312 A.2d 664 (App.Div. 1973), aff'd o.b., 65 N.J. 152, 319 A.2d 732 (1974); Franklin Mut. Ins. Co. v. Security Indem. Ins. Co., 275 N.J. Super. 335, 340-41, 646 A.2d 443 (App.Div.), certif. denied, 139 N.J. 185, 652 A.2d 173 (1994); see also Harrah's Atlantic City, Inc. v. Harleysville Ins. Co., 288 N.J. Super. 152, 157-59, 671 A.2d 1122 (App.Div. 1996); Minkov v. Reliance Ins. Co., 54 N.J. Super. 509, 516, 149 A.2d 260 (App.Div. 1959). Consequently, if plaintiff had consulted with Koch in deciding whether to transfer a patient to the hospital and negligently stepped on her toe during the course of that consultation, any resulting injury could reasonably be said to "originate from," "grow out of" or have a "substantial nexus" with plaintiff's rendering of professional services and thus fall within the coverage of the MIIX policy.
Although plaintiff's discussion with Koch may have had a less direct relationship to his professional services than this hypothetical, we are nevertheless satisfied that it "arose out of" the rendering of those services. When plaintiff accosted Koch, the patient was still in the nursing home waiting for the arrival of the ambulance. Consequently, plaintiff's actions could be viewed as an effort to prevent the patient's transfer to the hospital until after plaintiff had had an opportunity to determine his condition *469 and to speak with members of his family.[3] In addition, since plaintiff had a substantial number of other patients in the Crest Haven Nursing Home, he had a direct interest in the nursing home's general practices and procedures relating to the transfer of patients. Therefore, plaintiff's discussion with Koch regarding the nursing staff decision to transfer his patient to a hospital "originated from," "grew out of" and had a "substantial nexus" with his rendering of professional services to patients residing in the nursing home.
This conclusion is not affected by the fact that plaintiff grabbed Koch by the arm, directed her into another room and screamed at her. Coverage under the MIIX policy is established by the existence of a substantial nexus between the subject matter of the plaintiff's discussion with Koch and his professional practice rather than by plaintiff's conduct during that discussion. Indeed, our courts have held that conduct which has a substantial nexus to an insured activity may be found to "arise out of" that activity even if it is unlawful. In Westchester Fire Ins. Co. v. Continental Ins. Cos., supra, the Court held that automobile policies insuring against liability from "bodily injury ... arising out of the ownership, maintenance or use of [an] automobile" provided coverage to the driver and passenger in a car who were sued by a bicyclist injured by a stick the passenger had thrown out of the car. Rejecting the insurance carriers' argument that the bicyclist's injuries did not result from the use of the automobile but rather from the passenger's intentional act of throwing the stick, we stated:
[W]e do not agree that the words "arising out of the * * * use" require or justify the interpretation that before coverage exists it must appear that the injury is a direct and proximate result, in a strict legal sense, of the use of the automobile.... If such a meaning was intended ..., it is difficult to understand why a phrase *470 which clearly conveyed the idea of proximate causation, such as "caused by" or "resulting from," was not employed.
[T]he phrase "arising out of" must be interpreted in a broad and comprehensive sense to mean "originating from" or "growing out of" the use of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise.
[Id. at 37-38, 312 A.2d 664.]
Similarly, plaintiff's discussion with Koch arose out of the rendering of his professional services even though he had physical contact with her during the discussion.
Although the decisions in other jurisdictions construing medical malpractice coverage for "[i]njury arising out of the rendering of ... professional services," have not focussed upon the phrase "arising out of," they have generally construed malpractice policies liberally to extend coverage to various kinds of claims brought by parties other than individual patients. See, e.g., Pacific Indem. Co. v. Linn, 766 F.2d 754, 761-62 (3d Cir.1985) (malpractice insurer must defend personal injury claims against doctor arising out of alleged bad advice in a diet book); Geddes v. Tri-State Ins. Co., 264 Cal. App.2d 181, 70 Cal. Rptr. 183, 185 (1968) (malpractice insurer must defend slander suit brought against psychiatrist who made disparaging remarks about another psychiatrist during a consultation with a third psychiatrist); Mellow v. Medical Malpractice Joint Underwriting Ass'n, 567 A.2d 367, 368 (R.I. 1989) (malpractice insurer must defend invasion of privacy suit based on physician's release of blood-alcohol test results that were subsequently obtained by a newspaper); compare Inglewood Radiology Med. Group, Inc. v. Hospital Shared Servs., Inc., 217 Cal. App.3d 1366, 266 Cal. Rptr. 501, 503 (1989) (malpractice insurer has no duty to defend a doctor's suit for wrongful termination of hospital privileges since "the decision to terminate employment is a business or administrative decision," rather than a professional service); see generally, Debra E. Wax, Annotation, Coverage and Exclusions of Liability or Indemnity Policy on Physicians, Surgeons and Other Healers, 33 A.L.R.4th 14 (1984). The primary type of case in which courts generally have found no coverage under the same or similar policy language have been ones involving *471 sexual assaults upon patients. See, e.g., Roe v. Federal Ins. Co. 412 Mass. 43, 587 N.E.2d 214, 217 (1992); Niedzielski v. St. Paul Fire & Marine Ins. Co., 134 N.H. 141, 589 A.2d 130, 131 (1991); but see St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 782 (4th Cir.1995) (physician covered under "professional services" clause where liability arose out of artificial insemination of his own sperm into patients); St. Paul Fire & Marine Ins. Co. v. Asbury, 149 Ariz. 565, 720 P.2d 540, 542 (Ct.App. 1986) (coverage provided for alleged sexual assault by gynecologist which occurred while he was rendering professional services); Princeton Ins. Co. v. Chunmuang, supra. However, where an alleged sexual assault has arisen out of the performance of medical services, such as where a psychiatrist has engaged in sexual relations with a patient as a purported cure for "transference phenomenon," in which the patient becomes enamored with her therapist, the courts have found coverage. See, e.g., St. Paul Fire & Marine Ins. Co. v. Mitchell, 164 Ga. App. 215, 296 S.E.2d 126 (1982); Vigilant Ins. Co. v. Kambly, 114 Mich. App. 683, 319 N.W.2d 382 (1982). Most significantly, the out-of-state cases recognize that there are "many situations," such as those involving a consultation with another health care provider, "where a medical practitioner would be rendering professional services, but not rendering those services directly to a patient." Inglewood Radiology Medical Group, Inc. v. Hospital Shared Servs., Inc., supra, 266 Cal. Rptr. at 503 n. 4. Therefore, the decisions in other jurisdictions support our conclusion that the policy MIIX issued to plaintiff should be construed to provide coverage for the pending action arising out of his altercation with Koch.
We turn finally to plaintiff's appeal from the dismissal of his complaint against Aetna. The liability sections of the Aetna homeowners policy include a series of exclusions, one of which is for any bodily injury "arising out of the rendering or failing to render professional services." The language of this exclusion is nearly identical to the basic coverage provision of the MIIX medical malpractice policy. The evident intent of such a provision *472 in a homeowners policy is to exclude coverage for claims that ordinarily would be covered by professional malpractice insurance. See Frankenmuth Mut. Ins. Co. v. Kompus, 135 Mich. App. 667, 354 N.W.2d 303, 311-12 (1984); Fire Ins. Exchange v. Alsop, 709 P.2d 389, 390 (Utah 1985). Since we have previously concluded that Koch's claim against plaintiff is such a claim, it comes within the "professional services" exclusion of the Aetna policy. This conclusion makes it unnecessary for us to consider the "business pursuits" exclusion upon which the trial court based its dismissal of plaintiff's action against Aetna.
Affirmed.
NOTES
[1] Plaintiff did not cross-appeal from this part of the order. However, MIIX argues that if the trial court's declaration that its policy provides coverage to plaintiff for Koch's claim is affirmed, the case should nevertheless be remanded to the trial court "for a determination, to be made after the trial of the Underlying Action, as to whether the extent of Ms. Koch's injuries were improbable or unintended by [plaintiff]." We see no need for such a remand. Even if the trial court in the Koch case determines that the question whether plaintiff intended to cause Koch's injuries should not be submitted to the jury, see Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co., 98 N.J. 18, 25, 483 A.2d 402 (1984); Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 389-90, 267 A.2d 7 (1970), a jury verdict of no cause of action on Koch's assault and battery claim would make it unnecessary for the court to decide this question. If the trial of Koch's complaint leaves this question unresolved, MIIX may seek appropriate relief at that time.
[2] A panel of this court recently held, with Judge Keefe dissenting, that a medical malpractice policy providing coverage for any "`medical incident' arising out of ... supplying professional services" provides coverage for a claim based on an alleged sexual assault even though the policy contained an exclusion for "injury resulting from [the] performance of a criminal act." Princeton Ins. Co. v. Chunmuang, 292 N.J. Super. 349, 354, 678 A.2d 1143 (App.Div. 1996). However, this decision involved the scope of the exclusion for "criminal acts" rather than the basic coverage provision for "medical incidents arising out of supplying professional services."
[3] We note that Koch testified at her deposition that plaintiff told her subsequent to the altercation that, after speaking with the patient's son, he had decided to cancel the order providing for the patient's transfer to the hospital. However, Koch then informed plaintiff that the patient had already been taken to the hospital.