752 A.2d 849 (2000)
332 N.J. Super. 107
COUNTY OF HUDSON, Plaintiff-Appellant,
v.
SELECTIVE INSURANCE COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 2000.
Decided June 20, 2000.
*850 Robin Moses, Assistant County Counsel, for plaintiff-appellant (Francis DeLeonardis, Hudson County Counsel, attorney; Robin Moses, on the brief).
Jeffrey E. Gorrin, Livingston, for defendant-respondent (Gorrin & Gorrin, attorneys; Mr. Gorrin, on the brief).
Before Judges BAIME, EICHEN and WECKER.
The opinion of the court was delivered by EICHEN, J.A.D.
This appeal requires us to construe the scope of an additional insured endorsement in a commercial general liability policy (the policy) which provides coverage for liability "arising out of `your work.' " The policy was issued by defendant Selective Insurance Company (Selective) to Malpere Enterprises, Inc. (Malpere), a general contractor hired to perform work at the William Brennan Courthouse in Jersey City. The policy was required under a contract between the County of Hudson (the County) and Malpere for masonry restoration work at the courthouse.
The endorsement states in relevant part that the policy is amended to add the County as an additional insured "but only with respect to liability arising out of `your work' for that insured by or for you" (the endorsement).
An employee of a subcontractor, while at the courthouse seeking information to prepare a bid, slipped and fell on a marble staircase. The employee sued the County, whereupon the County requested Selective to defend and indemnify it in accordance with the endorsement. Selective declined coverage on the ground that the injured employee was not engaged in the contractor's "work" when he fell. Thereafter, the *851 employee obtained an $81,000 judgment against the County,[1] and the County instituted this action against Selective seeking indemnification.
On cross-motions for summary judgment filed by Selective and the County, the Law Division dismissed the County's complaint, concluding that there was no "substantial nexus" between the dangerous condition that caused the subcontractor's employee to fall and the contractor's "work" and that Selective properly declined to defend and indemnify the County under the endorsement.
The County appealed, contending that the Law Division misinterpreted the "arising out of `your work' " language in the endorsement. We agree and reverse the summary judgment in favor of Selective.

I.
On July 23, 1992, Selman Cicen, an employee of All Jersey Seamless Company, fell on a slippery step on a marble staircase leading from the first floor to the basement of the William Brennan Courthouse in Jersey City and was seriously injured. Cicen was at the courthouse to obtain information for preparing an estimate for subcontracting services in furtherance of the restoration contract entered into between Malpere and the County on May 15, 1992.[2] The contract required Malpere to obtain commercial liability insurance. Article 7.3 of the "Specifications-General Provisions," which was made a part of the contract, reads, in pertinent part, as follows:
The Contractor shall obtain and keep in force during the term of the contract, public liability and property damage insurance in companies and in form to be approved by the County. Said insurance shall provide coverage to the Contractor, any subcontractor performing work provided by this Contractor, and the county. The County of Hudson, its officers, agents, servants, and employees as their interest may appear, shall be named as an additional insured on said policy insofar as the work and obligations performed under the Contract are concerned. The coverage so provided shall protect against claims for personal injuries, including accidental death, as well as claims for property damages which may arise from any act or omission of the County, the Contractor or the subcontractor or by anyone directly employed by either of them. (Emphasis added.)
Hence, Article 7.3 of the contract required Malpere to obtain public liability and property damage insurance and to include the County as an additional insured on the policy "insofar as the work and obligations performed under the Contract are concerned." The contract also envisioned the use of subcontractors by Malpere in the performance of its work for the County.
In furtherance of the contract, Malpere sought and obtained a commercial general liability policy from Selective in which the County was named as an additional insured. The endorsement stated as follows:
WHO IS AN INSURED (SECTION II) is amended to include as an insured the person or organization shown in the Schedule [the County of Hudson, its agents, representatives & employees] but only with respect to liability arising out of "your work" for that insured by or for you.
* * * *
"Your work" means [in pertinent part]:
a. Work or operations performed by you or on your behalf....
*852 The critical issue is whether the County's liability for the injury Cicen sustained when he slipped and fell in the courthouse in the course of seeking information about the requirements of the subcontracting job comes within the scope of the "arising out of `your work' " language in the endorsement.

II.
In interpreting the language of the endorsement, we apply the following well settled principles used to construe an insurance policy. We begin by noting that although insurance policies are contractual in nature, they are not ordinary agreements; they are " `contracts of adhesion' and, as such, are subject to special rules of interpretation." Gibson v. Callaghan, 158 N.J. 662, 669, 730 A.2d 1278 (1999) (citing Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 611-12, 503 A.2d 862 (1986)); see also Home State Ins. Co. v. Continental Ins. Co., 313 N.J.Super. 584, 713 A.2d 557 (App.Div. 1998), aff'd, 158 N.J. 104, 726 A.2d 1289 (1999). Consequently, we are directed to take a broad and liberal view so that the policy is construed in favor of the insured. Franklin Mutual Ins. Co. v. Security Indemnity Ins. Co., 275 N.J.Super. 335, 340, 646 A.2d 443 (App.Div.), certif. denied, 139 N.J. 185, 652 A.2d 173 (1994).
Further, where the language of a policy will support two meanings, one favorable to the insured and the other favorable to the insurer, the interpretation sustaining coverage should be applied. Westchester Fire Ins. Co. v. Continental Ins. Companies, 126 N.J.Super. 29, 35, 312 A.2d 664 (App.Div.1973), aff'd o.b., 65 N.J. 152, 319 A.2d 732 (1974). In addition, "purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations." Id. at 36, 312 A.2d 664 (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961)); see also Gibson, supra, 158 N.J. at 671, 730 A.2d 1278; Franklin, supra, 275 N.J.Super. at 340, 646 A.2d 443. And "their policies should be construed liberally in their favor to the end that coverage is afforded `to the full extent that any fair interpretation will allow.' " Kievit, supra, 34 N.J. at 482, 170 A.2d 22 (citation omitted).
Moreover, it is fundamental "that ambiguities in an insurance policy are to be interpreted in favor of the insured...." Gibson, supra, 158 N.J. at 670, 730 A.2d 1278. In construing an ambiguous provision, "courts should consider whether more precise language by the insurer, had such language been included in the policy, `would have put the matter beyond reasonable question.' Doto [v. Russo, 140 N.J. 544,] 557, 659 A.2d 1371 [ (1995) ] (quoting Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 7, 170 A.2d 800 (1961)); see also Kook v. American Sur. Co., 88 N.J.Super. 43, 51, 210 A.2d 633 (App. Div.1965)...." Id. at 670, 730 A.2d 1278.
Against this framework, we interpret as a matter of first impression, the "arising out of `your work'" language in the endorsement. Initially, we note that the phrase "arising out of" has been defined broadly in other insurance coverage decisions to mean conduct "originating from," "growing out of" or having a "substantial nexus" with the activity for which coverage is provided. Westchester, supra, 126 N.J.Super. at 38, 312 A.2d 664; see also Franklin, supra, 275 N.J.Super. at 340-41, 646 A.2d 443; Harrah's Atlantic City, Inc. v. Harleysville Ins. Co., 288 N.J.Super. 152, 157-59, 671 A.2d 1122 (App.Div.1996); Minkov v. Reliance Ins. Co., 54 N.J.Super. 509, 516, 149 A.2d 260 (App.Div.1959). Accord American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 36, 713 A.2d 1007 (1998); see also Records v. Aetna Life and Casualty Ins., 294 N.J.Super. 463, 468, 683 A.2d 834 (App.Div.1996), certif. denied, 151 N.J. 463, 700 A.2d 876 (1997).
In Westchester, supra, 126 N.J.Super. at 37-38, 312 A.2d 664, we held that injuries *853 sustained by a bicyclist when struck by a stick thrown by a passenger from a moving vehicle arose out of the use of an automobile and were covered under the automobile liability policy of the owner of the automobile. In that case, we observed that the words "arising out of" do not mean the same thing as proximate causation in the sense that the injury must be "caused by" or "resulting from" the use of the automobile. We said there that if such a meaning was intended, the insurer would surely have employed language which clearly conveyed that idea. Ibid. Consequently, we concluded that "the phrase `arising out of' must be interpreted in a broad and comprehensive sense to mean `originating from' or `growing out of' the use of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle...." Id. at 38, 312 A.2d 664. We also stated, however, that "[w]hether the requisite connection or degree of relationship exists depends upon the circumstances of the particular case," concluding there that such a relationship was presented by the allegations of the complaint. Ibid.; see also Records, supra, 294 N.J.Super. at 463, 683 A.2d 834.
Applying this analysis here, we construe the "arising out of" language of the endorsement to mean "originating from" or "growing out of" Malpere's work. Having made that determination, we turn next to consider whether the occurrence for which coverage is sought, grew out of "[Malpere's] work" as required by the endorsement. Initially, we observe that the term "work" is ambiguous as it is capable of being interpreted in more than one way.
Selective defined the term "work" in the endorsement as "work or operations performed by you or on your behalf."[3] We assume that the inclusion of the term "operations" in the definition of "work" was not surplusage, and that "work" must mean, therefore, more than just the contractor's or its agent's physical work; it includes administrative work of a type ordinarily performed by a contractor, who is authorized to utilize subcontractors to fulfill its contractual obligations, as is the case here. That "work" would necessarily involve the contractor's furnishing information to any potential subcontractor considering whether to bid on a job, and reasonably would entail visits by that subcontractor to the worksite in order to obtain the needed information.
Indeed, that very "operation" was exactly what was occurring when Cicen arrived at the William Brennan Courthouse to obtain information to enable All Jersey Seamless Company, Cicen's employer, to decide if it wished to bid on the "subcontracting services for gutters." Selective concedes as much in its brief when it states that "Malpere was soliciting bids, and All Jersey Seamless Company was on site to inspect the premises in order to submit a bid." Nonetheless, Selective argues that because Cicen and his employer "were not present at Malpere's `behest' or at Malpere's instruction,"[4] and because the subcontract had not yet been awarded to All Jersey Seamless Company, he could not have been present to do Malpere's "work" and, therefore, the endorsement is not applicable. For the reasons we have already stated, we reject such a narrow interpretation of the endorsement and hold that "work" includes the subcontractor's activities on the premises in anticipation of submitting a bid.
Viewing the issue another way, we reach the same conclusion based on the County's objectively reasonable expectation *854 that coverage would be provided to Malpere's potential subcontractors while on the premises. Westchester, supra, 126 N.J.Super. at 36, 312 A.2d 664. In Westchester, we explained that in interpreting the phrase "arising out of," "the inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract[,] a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected." 126 N.J.Super. at 38, 312 A.2d 664, quoted in Lindstrom v. Hanover Ins. Co., 138 N.J. 242, 250, 649 A.2d 1272 (1994); see also Records, supra, 294 N.J.Super. at 463, 683 A.2d 834.
Article 7.3 of the "Specifications-General Provisions" in the contract between Malpere and the County required Malpere to obtain "public liability and property damage insurance" naming the County as an additional insured on the policy "insofar as the work and obligations performed under the Contract are concerned" (emphasis added). Those "obligations" envisioned the use of subcontractors on the project. The article further required "the coverage... [to] protect against claims for personal injuries,... which may arise from any act or omission of the County.... "(Emphasis added.) Notably, Selective has not claimed that it was unaware of the coverage Malpere was required to obtain to protect the County's interests. Accordingly, both the County and Selective could reasonably expect coverage essentially in conformity with the requirements of the contract. But even if Selective did not know the County's exact contractual requirements, Selective could reasonably anticipate that Malpere would use subcontractors to perform its work and that such subcontractors would send representatives to the worksite in preparation for submitting their bids. That the premises might be unsafe due to an "[un]expected and [un]forseen" dangerous condition is, in the contemplation of Selective, a natural and reasonable incident of the "work," and, therefore, a risk against which Selective might reasonably expect the County to be protected. See Westchester, supra, 126 N.J.Super. at 38, 312 A.2d 664.
Accordingly, we hold that Cicen's presence at the worksite, and the ensuing accident, was sufficiently connected to Malpere's "work" for the County to constitute a "substantial nexus" between the contract and the contractor's "work" requiring Selective to cover the loss.
The summary judgment in favor of Selective is reversed and the matter is remanded to the Law Division for entry of summary judgment in favor of the County.
NOTES
[1] We affirmed the judgment on appeal. Cicen v. State of New Jersey, A-7530-95T2 (July 1, 1997).
[2] These facts were taken from paragraphs 12 and 13 of the complaint filed by the County against Selective. We have not considered facts obtained from a deposition of the injured party objected to by Selective which were not reviewed by the motion judge.
[3] "Operations" has been defined as "a doing or performing of a practical work or of something involving practical application of principles or processes...." Webster's Third New International Dictionary, 1581 (3d. ed.1971).
[4] Paragraph 12 of the complaint filed by the County against Selective states, however, that "representatives of All Jersey Seamless Company came onto the premises of the William Brennan Courthouse at the request of Malpere Enterprises, Inc....."