970 A.2d 382 (2009)
407 N.J. Super. 177
W9/PHC REAL ESTATE LP and Grubb & Ellis Management Services, Inc., Plaintiffs-Respondents,
v.
FARM FAMILY CASUALTY INSURANCE COMPANY, Defendant-Appellant.
No. A-1618-07T3.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 2009.
Decided May 20, 2009.
*386 James W. Watson, Elizabeth, argued the cause for appellant (Law Offices of Michael J. Dunn, LLC, attorneys; Mr. Watson, on the brief).
Julia C. Talarick argued the cause for respondents (Coughlin Duffy, LLP, attorneys; James P. Lisovicz, of counsel; Ms. Talarick and Jason A. Pozner, Morristown, on the brief).
Before Judges FISHER, C.L. MINIMAN and KING.
The opinion of the court was delivered by
KING, P.J.A.D. (retired and temporarily assigned on recall).
In this declaratory judgment action, defendant Farm Family Casualty Insurance Company (Farm Family) appeals from a final order directing it to reimburse plaintiffs W9/PHC Real Estate LP and Grubb & Ellis Management Services, Inc., the owner and the property manager, respectively, of the Gateway Business Park in Mount Laurel, for the defense costs and indemnification of a slip-and-fall suit for damages brought against plaintiffs (the Danser action). Crabtree Landscaping & Turf Management, LLC (Crabtree), a company hired by plaintiffs to remove snow from their property, was also a defendant in that action. Plaintiffs sought coverage as additional insureds under Crabtree's liability insurance policy with defendant, Farm Family. The trial court held that defendant's coverage was coprimary with plaintiffs' coverage under their own policy with Zurich North American (Zurich).
This appeal presents the issue of the obligation to pay for a liability insurance claim and counsel fees where two insurers have conflicting "other insurance" clauses, one providing for "pro rata" payment, and the other for payment only when the other insurer's limit is exhausted. We reverse because defendant Farm Family's policy was excess coverage over plaintiffs' policy with Zurich. Since the amount plaintiffs paid in settlement of the injury claim, $115,000 plus costs and fees, did not exceed the limits of their policy with Zurich, the excess other-insurance clause in defendant's policy with Crabtree was never reached and defendant was not responsible for reimbursing plaintiffs. We also reverse the trial judge's counsel fee award to plaintiffs for the coverage and the declaratory judgment actions.

I
This is the procedural background. On March 13, 2006 plaintiffs filed a complaint for declaratory judgment seeking a ruling that they were additional insureds under defendant's policy with Crabtree, that defendant was required to provide them with a defense and indemnification, that defendant's coverage was primary and Zurich's excess, and that they were entitled to attorney's fees and costs incurred for plaintiffs' defense in the Danser action.
*387 On September 7, 2006 plaintiffs filed a motion for summary judgment. On October 11, 2006 defendant filed a cross-motion for summary judgment. A hearing on the motions was held on October 20, 2006. On that date, the judge signed an order granting plaintiffs' motion and issued a written decision. A motion for reconsideration was denied.
After another hearing on July 27, 2007 the judge issued a written decision stating that defendant was required to reimburse plaintiffs for half the fees and costs they incurred in the Danser action, and all the fees and costs in the declaratory judgment action. Defendant was also directed to reimburse plaintiffs half the settlement in the Danser action, or $57,500. On October 25, 2007 the judge signed an order awarding plaintiffs $15,302.82 in fees and costs relating to the Danser action, $59,817.80 in fees and costs relating to the declaratory judgment action, and the $57,500 insurance reimbursement.

II
This is the factual background. Under the service contract between plaintiffs and Crabtree, dated September 6, 2002 Crabtree agreed to perform snow removal at the Gateway Business Park and to name plaintiffs as additional insureds on all policies required by the contract. Crabtree also was required to name plaintiffs on an additional-insured endorsement form known as ISO form GL2009. However, Crabtree never did so. Nonetheless, in letters between the attorneys, answers to interrogatories and response to plaintiffs' statement of undisputed facts, defendant did not dispute that plaintiffs were additional insureds under Crabtree's policy. A blank form of the endorsement contained in the record indicates that it covered an additional insured only with respect to liability "arising out of" Crabtree's "ongoing operations performed for the additional insured(s) at the location designated above" or "[a]cts or omissions of the additional insured in connection with their general supervision of such operations" (emphasis added). Excluded was bodily injury or property damage "arising out of any act or omission of the additional insured(s) or any of their `employees,' other than the general supervision by the additional insured(s) of" Crabtree's ongoing operations performed for the additional insured.
In addition, the service contract contained an indemnity provision stating that Crabtree would indemnify plaintiffs against any "loss, costs, claims, damages" or suits asserted against them arising out of or in connection with Crabtree's performance, or failure to perform, but would not indemnify for "any claims finally determined by a court of competent jurisdiction to have arisen solely from the gross negligence or willful acts or omissions of the party seeking to be indemnified."
Under the insurance policy issued by defendant to Crabtree, effective December 12, 2002 to December 12, 2003, defendant agreed to pay legally obligated damages because of "personal injury" "[a]rising out of the conduct" of Crabtree's business. The "other insurance" section, section H, provided as follows:
1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect it or not. But we will not pay more than the applicable Limit of Insurance.
2. Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.
3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or *388 "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.
The limitation for bodily injury on defendant's policy was $1 million per occurrence and $2 million total.
A certificate of insurance with respect to defendant's policy was transmitted by the Slonis Agency to Crabtree on the morning of December 13, 2002. The certificate listed both W9/PHC Real Estate LP and Grubb & Ellis as additional insureds.
Plaintiffs had their own general commercial liability policy through Zurich. The other insurance clause of the Zurich policy provided that where there was other insurance available to the insured for a covered loss:
a. Primary Insurance
This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
b. Excess Insurance
This insurance is excess over:
....
(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.
When this insurance is excess, we will have no duty ... to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
(1) The total amount that all such other insurance would pay for the loss in the absence of this Insurance....
....
c. Method of Sharing
If all of the other Insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.
The limit on the Zurich policy for personal injury was $1 million per occurrence and $5 million total.
After a snowstorm on December 6, 2002 Crabtree salted plaintiffs' parking lot on December 7, 8 and 9 because snow had melted and frozen during the night, but did not do so on the 10th, 11th or 12th because there was not enough ice to salt. On December 13, Crabtree received a call either at 5:45 a.m. or 8 a.m., the record is contradictory, that some black ice had formed in the parking lot; Crabtree then drove to the site and arrived around 9 a.m. that morning.
At about 8:45 a.m. on December 13, Thomas Danser, an employee for one of plaintiffs' tenants, Lockheed Martin, parked about three spaces from the end of a row where snow had been removed by Crabtree in plaintiffs' parking lot. He did not notice any ice in the area of the parking *389 lot. As Danser was walking at the end of the row, he slipped and fell, injuring his ankle. Some of the piled snow had melted and formed a frozen strip six to nine inches in width and twenty-five inches in length. The area of the fall was where the parking lot was graded to allow the water to run off. However, the ice apparently formed as a result of a melting mound of snow that had been piled up. According to the building engineer at Gateway Business Park, Christopher Lanutti, if any area of the site was subject to refreezing, it was the area where Danser fell.
An engineering report prepared by Wayne Nolte, on behalf of Danser, concluded that the untreated layer of black ice constituted a hazardous condition which caused the fall, and that plaintiffs should have spread sand over the surface to maintain it in a safe condition.
Both plaintiffs and Crabtree were named as defendants in the action brought by Danser in April 2004. The complaint contained the following allegations:
The defendant(s) ... were negligent and careless in that they caused and permitted unsafe, dangerous and hazardous conditions and defects to exist on the land and/or premises, failed to warn plaintiff of dangers of which they knew or reasonably should have known, failed to maintain the property in a reasonable and prudent manner, were negligent in the design and construction of the said property, negligently failed to keep the property in good order, failed to detect and/or warn of defective conditions upon the premises, affirmatively created a danger by requesting the plaintiff to act in such a way that the plaintiff would be a victim to the said dangerous conditions, failed to make the property safe within the scope of the invitation to plaintiff and were otherwise negligent and careless all in violation of the duties owed to the plaintiff.
Defendants ... were negligent and careless in the hiring, training and monitoring of their employees[.]
In July 2004, January 2005 and January 2006, plaintiffs' attorney sent Crabtree letters demanding that Crabtree take over the defense and indemnify plaintiffs with respect to the Danser action. In response, defendant denied coverage. Plaintiff W9 Real Estate was initially represented by the firm of Cooper Levenson in the Danser action, while Grubb & Ellis was represented by Daniel & Dochney, a counsel to Zurich's insurance group. Subsequently, Daniel & Dochney replaced Cooper Levenson. A defense was also provided to plaintiffs by Zurich by way of the Coughlin Duffy firm, plaintiffs' attorneys in the declaratory judgment action. Plaintiffs ultimately settled the Danser action for $115,000.
In the declaratory judgment action, plaintiffs sought recovery for fees paid to the initial two firms. However, they claim that their defense was provided by Zurich, and that they did not retain personal counsel. Why plaintiffs, rather than Zurich, are pursuing the recovery is not entirely clear in the record.

III
For clarity, we have restated the four principal issues raised by Farm Family and critical to this appeal.
I. DID THE COURT ERR BY FINDING THAT PLAINTIFFS WERE ENTITLED TO A DEFENSE IN THE DANSER ACTION AS ADDITIONAL INSUREDS UNDER DEFENDANT'S POLICY WITH CRABTREE?
II. DID THE COURT ERR BY FINDING THAT DEFENDANT'S *390 POLICY WITH CRABTREE WAS CO-PRIMARY WITH, RATHER THAN EXCESS TO, PLAINTIFFS' POLICY WITH ZURICH?
III. DID THE COURT ERR BY FAILING TO ALLOCATE DEFENSE COSTS BASED ON UNCOVERED CLAIMS IN THE DANSER COMPLAINT?
IV. DID THE COURT ERR IN ITS DETERMINATION OF THE AMOUNT OF COUNSEL FEES AND COSTS PLAINTIFFS WERE ENTITLED TO RECOVER IN BOTH THE DANSER ACTION AND THE DECLARATORY JUDGMENT ACTION?

IV
The first issue for consideration is the duty to defend. Defendant contends it was not required to provide plaintiffs with a defense because Danser did not allege negligent supervision against plaintiffs, an action covered by the Crabtree policy, in his complaint. In addition, defendant relies on extrinsic evidence in support of its claim that Crabtree was not involved in an ongoing operation, as required by that policy.
Plaintiffs maintain that the trial court's grant of summary judgment on this point should be affirmed because they were additional insureds under the Crabtree policy, and the Danser complaint alleged negligence claims covered by the "bodily injury" portion of that policy.
In granting plaintiffs' summary judgment motion, the trial judge stated:
An insurer cannot use facts outside of the complaint to deny a defense where the complaint alleges a potentially covered claim.... Even though facts outside the four corners of the complaint made known to an insurer can give rise to a duty to defend, "outside facts are not considered where the complaint alleges an action which is covered under the insurance contract." Aetna Cas. Sur. Co. v. Ply Gem Indus., Inc., 313 N.J.Super. 94, 102, 712 A.2d 717 (Law Div.1997)[sic] (citing Loftin v. United States Fire Ins. Co., 106 Ga.App. 287, 127 S.E.2d 53, 57, 59 (1962)). Thus, insurers must defend suits that allege potentially covered claims even if known outside facts "put the claim outside of insurance coverage." Id.

....
[T]o determine whether Farm Family has to defend Plaintiffs in the Danser action, the Court should compare the allegations in the complaint with the language of the policy. The complaint alleges bodily injury due to Plaintiffs['] and Crabtree's negligence and carelessness in that they caused and permitted unsafe, dangerous and hazardous conditions and defects to exist on the premises, failed to warn of said dangers among others. The policy provides that Farm Family "will pay those sums that the insured becomes legally obligated to pay" as damages because of "bodily injury," "property damage," "personal injury," or advertising injury to which the insurance applies. Further, the policy provides: "We will have the right and duty to defend any suit seeking those damages."
....
Farm Family has a duty to defend [plaintiffs]. The Danser complaint alleges negligence claims which are covered under Farm Family's policy. The policy is clearly triggered by the allegations in the complaint.
A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if *391 any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). If there exists a single unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a genuine issue of material fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Thus, when the evidence is so one-sided that one party must prevail as a matter of law, summary judgment should be granted. Ibid.
The duty to defend arises when the complaint states a claim constituting a risk insured against. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255 (1992). To make that determination, the complaint is placed alongside the policy and the test is whether the allegations of that complaint, upon its face, fall within the risk insured against. The Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512, 210 A.2d 221 (1965). When the two correspond, the duty to defend arises, irrespective of the claim's actual merit because the duty to defend is broader than the duty to indemnify. Voorhees, supra, 128 N.J. at 173-74, 607 A.2d 1255.
Generally, an insurance policy should be interpreted according to its plain and ordinary meaning. Id. at 175, 607 A.2d 1255. However, because insurance contracts are contracts of adhesion, the language should be construed liberally in favor of the insured and strictly against the insurer. County of Hudson v. Selective Ins. Co., 332 N.J.Super. 107, 112-13, 752 A.2d 849 (App.Div.2000); Sinopoli v. North River Ins. Co., 244 N.J.Super. 245, 250, 581 A.2d 1368 (App.Div.), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991). Thus, when the meaning of a phrase in the policy is ambiguous, doubts should be resolved in favor of the insured and in favor of coverage. Voorhees, supra, 128 N.J. at 175, 607 A.2d 1255. Further, "New Jersey courts have given a broad and liberal interpretation to common insurance policy language pertaining to coverage for additional insured parties for injuries `arising out of' work performed by the main policyholder." Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 444 (3d Cir.2003).
Defendant argues that the court erred in refusing to consider extrinsic facts when making its determination, such as Nolte's engineering report concluding that plaintiffs were negligent in treating the ice formation, the service contract between plaintiffs and Crabtree, and the depositions of Danser and Lanutti. Based on that evidence, defendant maintains it did not have a duty to defend because, as alleged in Danser's complaint, it was plaintiffs' own negligence, rather than their negligent supervision of Crabtree, that caused the accident, and because Crabtree was not undertaking any "ongoing operations" at the time of the slip-and-fall.
Extrinsic facts, those outside the complaint, later revealed in discovery, may trigger the duty to defend. SL Indus. v. Am. Motorists Ins. Co., 128 N.J. 188, 198-99, 607 A.2d 1266 (1992); S.T. Hudson Engineers, Inc. v. Pa. Nat'l Mut. Cas. Co., 388 N.J.Super. 592, 606, 909 A.2d 1156 (App.Div.2006), certif. denied, 189 N.J. 647, 917 A.2d 787 (2007). However, an insurer must defend if the complaint states a cause of action covered by the policy even if the insurer knows of extrinsic facts which would put the claim outside of the insurance coverage. Aetna Cas. & Sur. Co. v. Ply Gem Indus., 313 N.J.Super. 94, 102, 712 A.2d 717 (Law Div.1997), rev'd on other grounds, 343 N.J.Super. 430, 778 A.2d 1132 (App.Div.), certif. denied, 170 N.J. 390, 788 A.2d 774 (2001). We find no *392 merit in defendant's argument. Reference to extrinsic evidence to interpret a contract is irrelevant here because such evidence is not as readily considered in the insurance context, as in the general contract case.
Defendant also contends that extrinsic evidence should have been considered because the term "additional insured" is not defined in the policy, thereby creating an ambiguity which warranted examination of plaintiffs' "objectively reasonable expectations." However, as noted above, defendant did not dispute at trial that plaintiffs were "additional insureds" under the Crabtree policy, and the court adopted that view. Therefore, defendant is estopped from arguing to the contrary on appeal. Commercial Ins. Co. of Newark v. Steiger, 395 N.J.Super. 109, 114-15, 928 A.2d 126 (App.Div.2007).
Defendant further argues that it did not have a duty to defend because of an indemnity provision in the contract between plaintiffs and Crabtree, which stated that Crabtree would indemnify plaintiffs against any "loss, costs, claims, damages" or suits asserted against them arising out of or in connection with Crabtree's performance, or failure to perform, but would not indemnify for "any claims finally determined by a court of competent jurisdiction to have arisen solely from the gross negligence or willful acts or omissions of the party seeking to be indemnified." We do not see the relevance of this provision to the question of whether defendant had a duty to defend under its policy with Crabtree. Whether or not plaintiffs did or did not have a right to be indemnified for their own negligence has no bearing on whether they were entitled to a defense and indemnification for their negligent supervision as an additional insured under Crabtree's policy with defendant. Indemnification agreements and insurance contracts cover separate matters. "Entirely different principles of law apply to the interpretation of an indemnification agreement as opposed to an insurance policy." Harrah's Atlantic City, Inc. v. Harleysville Ins. Co., 288 N.J.Super. 152, 159, 671 A.2d 1122 (App.Div.1996). Thus, defendant's discussion of the law relating to indemnification agreements is of no import on this appeal.
Defendant relies on Pennsville Shopping Center Corp. v. American Motorists Insurance Co., 315 N.J.Super. 519, 521, 719 A.2d 182 (App.Div.1998), certif. denied, 157 N.J. 647, 725 A.2d 1128 (1999), where insurers for a landlord shopping center and a tenant supermarket disputed coverage regarding a fall by a customer of the tenant in the shopping center's parking lot. The landlord's insurer sought indemnification or contribution from the tenant's insurer with respect to the customer's lawsuit. Ibid. In their lease agreement, the parties had provided that the tenant would indemnify the landlord from loss or liability occurring on the premises except for those due to the landlord's negligence, and that the tenant would name the landlord as an additional insured on its policy. Ibid. The lease also provided that the landlord would indemnify the tenant from loss or liability from damages resulting from the landlord's failure to carry out repairs or maintenance of the common areas required by the lease. Id. at 521-22, 719 A.2d 182. The tenant also was required to pay its pro rata share of the costs of maintaining the common areas of the shopping center, including the parking lot. Id. at 522, 719 A.2d 182.
We held that, irrespective of the language of the tenant's insurance policy covering the landlord as an additional insured, the tenant was not required to indemnify the landlord because of a condition which was the landlord's responsibility under the lease. Id. at 523, 719 A.2d 182. We stated: *393 "[A] tenant cannot logically be seen to providing insurance to a landlord in respect of a liability for which the landlord has assumed sole responsibility and has agreed to indemnify the tenant. The indemnification rights of plaintiff carrier can rise no higher than the rights of its insured." Ibid. In turn, the tenant's naming of the landlord as an additional insured "must be taken to be coextensive with the scope of [the] tenant's own liability." Ibid.
In the present case, there was no similar indemnification provision in the agreement between plaintiffs and Crabtree. Plaintiffs did not take sole responsibility for any and all negligence on their part, and did not agree to indemnify Crabtree for its failure to maintain the common areas.
Perhaps more to the point is Harrah's Atlantic City, Inc. There, two patrons at the tenant store were struck by a car driven by one of the landlord's employees after leaving the store. 288 N.J.Super. at 155, 671 A.2d 1122. The lease required the tenant to name the landlord as an additional insured, and to indemnify the landlord in certain circumstances. Ibid. The landlord was covered under the tenant's insurance policy "only with respect to liability arising out of the ... use of that part of the premises leased" to the tenant. Id. at 156, 671 A.2d 1122. We ultimately concluded that the tenant's insurer had a duty to defend and indemnify the landlord. Id. at 158-59, 671 A.2d 1122. We rejected the tenant's insurer's contention that coverage would be inconsistent with a determination by a separate panel of this court that the tenant was not obligated to indemnify the landlord for the accident under their lease agreement. Id. at 159, 671 A.2d 1122. According to this court, "[e]ntirely different principles of law apply to the interpretation of an indemnification agreement as opposed to an insurance policy." Ibid.
Moreover, defendant's assertion that Danser did not allege negligent supervision on plaintiffs' part is not supported by the complaint in that action. The complaint alleged that plaintiffs were "negligent and careless in the hiring, training and monitoring of their employees" (emphasis added). Therefore, negligent supervision was alleged.
Defendant cites the Supreme Court's observation in Ohio Casualty Insurance Co., supra, 44 N.J. at 512, 210 A.2d 221, that a declaratory judgment action should not be entertained "where an insurer bases its entitlement not to defend a damage action upon the contention that the true facts are at odds with the allegations of that action." However, defendant does not allege that the "true facts are at odds with the allegations" in the Danser complaint. Rather, it seeks to introduce additional evidence allegedly reflective of plaintiffs' negligence. Similarly, defendant points to the Court's observation in Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 388, 267 A.2d 7 (1970), that the duty to defend may depend upon a factual issue which can only be resolved by trial of the underlying action. However, here, the underlying action has been resolved, and there are no unresolved relevant factual issues apparent.
Defendant also maintains that it did not have a duty to defend because there were no "ongoing operations" performed by Crabtree for plaintiffs at the time of the loss, as set forth in the ISO form, and therefore plaintiffs had no reasonable expectation of coverage. However, even assuming that was true, the ISO form provided coverage for Crabtree's ongoing operations or plaintiffs' negligent supervision of Crabtree. As noted above, the Danser complaint did, in fact, allege negligent supervision on plaintiffs' part. Defendant's argument that plaintiffs were *394 not entitled to a defense under the Crabtree policy is rejected.

V
The next and crucial issue is whether defendant Farm Family's policy was excess or coprimary. Defendant contends that the trial court erred in not finding that the Zurich policy was primary and that defendant's policy was excess only. Defendant maintains that it was not responsible either to indemnify plaintiffs or for the defense costs incurred in the Danser action.
Plaintiffs maintain that the two policies were coprimary because the excess coverage provision in defendant's policy applied only to property damage, not personal injury.
In denying defendant's motion to reconsider its grant of summary judgment to plaintiffs, the trial judge stated with respect to this question:
Although the Farm Family policy is not endorsed, W9 is an additional insured under the Farm Family policy by way of a certificate issued by Farm Family's captive agent. Previously, the Court concluded that the Farm Family policy is not excess because W9 seeks liability coverage arising out of a claim of bodily injury, which is covered under Farm Family's Business Liability Coverage. W9 is not seeking coverage for direct physical loss. Hence, the Zurich policy is also primary and as such both policies should share the cost of defense.
Farm Family's Policy is not excess. Since the "additional insured by attachment of an endorsement" exclusion does not apply because the Farm Family policy is unendorsed, the Zurich and the Farm Family Policy are co-primary. Both policies were triggered; hence they must share the cost of coverage.
Primary insurance attaches immediately upon the happening of the occurrence that gives rise to liability. CNA Ins. Co. v. Selective Ins. Co., 354 N.J.Super. 369, 378, 807 A.2d 247 (App. Div.2002). An excess policy provides protection to an insured for liability for an amount above the maximum coverage provided by the primary policy. Id. at 379, 807 A.2d 247. However, there is a distinction between a primary insurance policy containing an excess other-insurance clause and a true excess policy. Ibid. A true excess policy is conditioned on the existence of a primary policy; on the other hand, a primary policy with an excess other-insurance clause is a device by which a primary insurer seeks to limit or eliminate its liability where another primary policy covers the risk, thus making it secondarily liable. Id. at 379-80, 807 A.2d 247.
Other insurance clauses generally fall into three categories: pro rata, excess and escape. The Home Indem. Co. v. Gen. Accident Ins. Co. of Am., 213 Ill.App.3d 319, 157 Ill.Dec. 498, 572 N.E.2d 962, 963-64 (1991). A pro rata provision generally provides that where the insured has other insurance against a loss covered by the policy, the insurer will not be liable for a greater proportion of such loss than the applicable limit of liability in the policy bears to the total applicable limit of liability of all insurance against such loss. 15 Couch on Insurance 3d § 219:27 (2005). An excess other-insurance clause seeks to make an otherwise primary policy excess insurance should another primary policy cover the loss in issue. Id. at § 219:33. Thus, where one policy has an excess other-insurance clause and another policy on the same risk does not, the former policy will not come into effect until the limits of the latter policy are exhausted. Ibid. An escape clause seeks to hold the insurer not liable for a loss whenever there is other *395 valid and collectable insurance covering the risk. Id. at § 219:36. There is also a hybrid excess-escape clause whereby the insurer is not liable where the limits of the other available coverage are equal to or exceed its own. Ibid.
As noted above, defendant's other-insurance clause sets forth two bases for other-insurance coverage, both on an excess basis:
1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.
2. Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.
Thus, the defendant Farm Family's provision was either an excess or an excess-escape clause. The distinction is not important for purposes of resolving the question before us.
The Zurich policy states that where it was primary, and there was other insurance that was also primary, then if the other insurance permitted contribution by equal shares, it would contribute by the same method. However, if the other insurance did not permit contribution by equal shares, then it would "contribute by limits." Under this method, "each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers." This latter provision was a pro rata provision in accordance with the principles stated above.[1]
Plaintiffs successfully argued at trial that defendant's policy with Crabtree was coprimary because its other insurance provision covered claims for bodily injury. Plaintiffs claimed that "direct physical loss or damage," the second basis for coverage under Crabtree's other insurance clause, applied to property damage, not personal injury. It is unclear as to what "direct physical loss or damage" refers. One possibility is that it is meant to refer to an "all-risk" policy, i.e., risks not usually contemplated, akin to a mutual mistake at the time the policy was entered into. Victory Peach Group, Inc. v. Greater N.Y. Mut. Ins. Co., 310 N.J.Super. 82, 87-88, 707 A.2d 1383 (App.Div.1998); Ariston Airline & Catering Supply Co. v. Forbes, 211 N.J.Super. 472, 479, 511 A.2d 1278 (Law Div.1986). Whatever its meaning, even assuming that it does refer to property damage, we conclude plaintiffs were covered by the first section of the Zurich policy's other-insurance clause. Under that provision, the Zurich policy constituted "other insurance covering the same loss or damage." Thus, we conclude plaintiffs were other insureds under defendant's policy. However, the more significant issue is the relationship between that other insurance provision in the Farm Family policy and the one contained in the Zurich policy.
Where two carriers have responsibility for a claim, the other-insurance clause of each policy must be examined to determine whether there exists language which may govern the contribution each party should make. Universal *396 Underwriters Ins. Co. v. CNA Ins. Co., 308 N.J.Super. 415, 417, 706 A.2d 217 (App. Div.1998). In New Jersey, where the two policies in question each have an other-insurance clause stating that it is excess over any other policy, the provisions are "mutually repugnant," and are disregarded. Cosmopolitan Mut. Ins. Co. v. Cont'l Cas. Co., 28 N.J. 554, 562, 147 A.2d 529 (1959). In such instance, the carriers stand on equal footing, with each sharing payment of liability equally until the limit of the smaller policy is exhausted. Universal Underwriters Ins. Co., supra, 308 N.J.Super. at 418-19, 706 A.2d 217. Where the other insurance clause of each policy contains a pro rata provision stipulating that each shall bear a proportion of the loss to the extent of the applicable insurance, then the policies are not mutually repugnant and each carrier must bear its respective proportionate share of the loss. Id. at 419, 706 A.2d 217. The question that is raised in this instance is what is the outcome when the other insurance clauses of the two policies differ.
The question of allocating loss among insurers where one policy has an other-insurance clause calling for a pro-rata sharing of the loss, while the other policy has an other insurance clause providing for excess coverage, appears substantially unresolved in New Jersey. In Atlantic Mut. Ins. Co. v. Continental Nat'l Am. Ins. Co., 123 N.J.Super. 241, 244-45, 302 A.2d 177 (Law Div.1973), one insurer had a pro-rata other insurance clause, while the other insurer apparently had a true excess clause. The court held that the former insurer was responsible for the entire loss, stating: "In situations where one policy contains a pro rata clause, and the other an excess clause, the excess clause governs and the insurer under the excess clause is not liable until the company having the pro rata clause has paid to the extent of its policy limit." Id. at 245, 302 A.2d 177. This comports with the general rule in New Jersey that where an excess clause and a pro rata clause appear in concurrently effective policies, the pro rata clause is disregarded and full effect is given to the excess clause, making the pro rata clause the primary insurance. Cosmopolitan Mut. Ins. Co., supra, 28 N.J. at 561-62, 147 A.2d 529. However, as noted, Atlantic Mutual Insurance Co. involved a true excess clause rather than an other insurance excess clause, so the case is distinguishable from the case before us.
Englert v. The Home Depot, 389 N.J.Super. 44, 58, 911 A.2d 72 (App.Div.2006), certif. denied, 192 N.J. 71, 926 A.2d 855 (2007), involved a dispute between contractors regarding an injury suffered at a construction site; the other-insurance endorsement issued to the main contractor indicated that the policy was excess over any other primary insurance for liability for damages arising out of the premises or operations. The subcontractor obtained a policy listing the contractor as an additional insured, which stated that the policy was excess over any other insurance unless the subcontractor had a written-agreement for the insurance to apply on a primary or contributory basis. Ibid. This court concluded that the latter policy was excess to the former as to the contractor because the written agreement condition in the policy was never satisfied. Id. at 59, 911 A.2d 72. In this instance, defendant's excess-coverage provision did not contain any such restrictive condition. Therefore, Englert also is distinguishable from our present situation.
The issue of conflicting pro-rata and excess other-insurance clauses has been considered in other jurisdictions. See generally, Annotation, Resolution of Conflicts, in Non-Automotive Liability Insurance Policies, Between Excess or Pro *397 Rata "Other Insurance" Clauses, 12 A.L.R.4th 993 (1982). Cases generally fall into two types. In the first type, the pro-rata clause in one policy and the excess clause in the other are not held mutually repugnant and the policy containing the pro-rata provision must be exhausted first up to the policy limits. Id. at 997. This is the majority rule. In the second type, commonly referred to as the Lamb-Weston rule, developed in Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 219 Or. 110, 341 P.2d 110 (1959), all other-insurance clauses, escape, excess or pro rata, are treated the same. Thus, any conflict between such clauses is considered to be mutually repugnant and the loss is apportioned according to the limits of each policy. 12 A.L.R.4th, supra, at 997. This approach has been deemed the minority view. Ibid.
With respect to the majority rule, one court has stated:
[T]he policy containing the pro rata clause is valid and collectible primary insurance that triggers application of the excess clause in the second policy. The excess clause in the second policy therefore is given full effect and that carrier is only liable for the loss after the primary insurer has paid up to its policy limits. The policy containing the excess clause, however, is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro rata clause, because when a stated contingency occurs, that is, when there is other valid and collectible primary insurance available to the insured, the policy containing the excess clause becomes secondary coverage only.
[Jones v. Medox, Inc., 430 A.2d 488, 491 (D.C.1981) (footnote omitted).]
Criticism of the majority rule focuses on what critics claim is its circularity of reasoning. Id. at 492.
Adherents to the minority rule have focused on its simplicity and avoidance of the linguistic vagaries of insurance policies, as well as its equity, where two insurers covering the same risk pay equally. Ibid. Thus, in Travelers Cas. & Surety Co. v. Century Surety Co., 118 Cal.App.4th 1156, 13 Cal.Rptr.3d 526, 528-29 (2004), the court noted that California adopted the minority position based on equitable considerations, equalizing the burden among insurers and preventing one insurer from profiting at the expense of others. Id. at 528-29. The court equated excess-only provisions with escape clauses, noting that such clauses were disfavored as a matter of public policy. Id. at 529. The court also expressed concern about giving full effect to the language of the policy setting forth the pro-rata coverage, and that the contrary view would ignore the historical purpose for other-insurance clauses, namely, preventing multiple recoveries by insureds in cases of overlapping coverage for the same loss. Ibid.
However, there have been a number of criticisms leveled against the Lamb-Weston rule. One is that it ignores a basic tenet of the law of contracts by failing to consider, and giving effect to, all of the language in a policy to determine its meaning and intent. The Hartford Ins. Co. v. Kentucky Farm Bureau Ins. Co., 766 S.W.2d 75, 76-77 (Ky.Ct.App.1989). Another criticism is that by adopting such a rule, courts are legislating pro rata apportionment whenever a policy has an other-insurance clause. Id. at 77. Additional criticisms include: (1) the rule fails to recognize that the insurers have no contractual relationship with each other, and (2) it results in unnecessary duplication and increased premiums. Jones, supra, 430 A.2d at 492.
We adopt the majority rule. See The Home Indem. Co., supra, 572 N.E.2d at *398 964 (where one policy has a pro-rata other-insurance clause and another policy contains an excess other-insurance clause, the former policy is primary and the latter policy is excess). This rule recognizes and considers the language in both policies. In the absence of controlling precedent, the specific language of the policies should be applied, and given its ordinary meaning. Universal Underwriters Ins. Co., supra, 308 N.J.Super. at 419, 706 A.2d 217. By adopting such an approach, "[n]either insurance company is getting `stuck' for anything more that it contracted to provide for its insured." Jones, supra, 430 A.2d at 492. Adopting the majority position would also comport with the spirit of Judge Demos' 1973 Atlantic Mutual Insurance Co., supra, Law Division decision. We find that arguments for the majority rule are stronger than these for the Lamb-Weston rule. We disagree with the trial judge here who required defendant to contribute equally to the $115,000 settlement.
Defendant should not be liable for the counsel fees incurred in defense of the Danser action or the fees in the declaratory action. Defendant stated in its policy that when its coverage was excess, "we will have no duty ... to defend any claim or `suit' that any other insurer has a duty to defend." Since defendant's coverage was expressly excess, it does not have a duty to defend.
A similar situation arose in Farmington Cas. Co. v. United Educators Ins. Risk Retention Group, Inc., 117 F.Supp.2d 1022, 1026-27 (D.Colo.1999), which involved a pro-rata other-insurance clause and an excess other-insurance clause, containing a duty-to-defend provision only where the coverage was excess. The court found that the excess insurer had no duty to contribute to the pro-rata insurer's defense costs because of the existence of other insurance that covered the same loss. Id. at 1027. Thus, as a general matter, according to the court, where the other-insurance excess clause must be enforced, the excess carrier has no duty to pay the defense costs of the primary carrier. Ibid. See also Home Indemnity, supra, 157 Ill.Dec. 498, 572 N.E.2d at 964 (holding that although duty to defend is broader than duty to pay, where insurer was found to be excess based on other-insurance clause of policy, insurer was not required to pay defense costs).
The counsel fees awarded plaintiffs for the declaratory judgment action also must be reversed. Rule 4:42-9(a)(6) permits a court to make an award of counsel fees in "an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." Specifically, the award may be made to a successful claimant in a declaratory judgment action to establish coverage, whether the claimant be an insured or an insurer. Tooker v. Hartford Accident & Indem. Co., 136 N.J.Super. 572, 576, 347 A.2d 371 (App. Div.1975), certif. denied, 70 N.J. 137, 358 A.2d 184 (1976). The claimant need only be successful in recovering indemnity or defense costs resulting from the underlying action in order to be awarded counsel fees. Schmidt v. Smith, 294 N.J.Super. 569, 591, 684 A.2d 66 (App.Div.1996), aff'd, 155 N.J. 44, 713 A.2d 1014 (1998). Based on our conclusion that plaintiffs should not have succeeded at trial, we agree with defendant that the entirety of the counsel fee award must be reversed. The remaining issues are rendered moot by our determination that the Zurich policy is primary.
Reversed and remanded for vacation of the judgment.
NOTES
[1] Plaintiffs do not allege that Zurich's policy is excess under the provision of the other-insurance clause, cited in the statement of facts, that the policy was excess to "[a]ny other primary insurance ... covering liability for damages arising out of the premises or operations for which [plaintiffs] have been added as an additional insured by attachment of an endorsement," because they recognize that the ISO form was never signed (emphasis added).