997 A.2d 1072 (2010)
413 N.J. Super. 160
JEFFREY M. BROWN ASSOCIATES, INC. and Zurich American Insurance Co., Plaintiffs-Respondents,
v.
INTERSTATE FIRE & CASUALTY COMPANY, Defendant-Appellant, and
Liberty Insurance Underwriters, Inc., Regional Scaffolding & Hoisting Company, Inc., John Butler, Carmine Pucillo, Joseph Griglio, Nancy Griglio, Toby Soprano and Marie Soprano, Defendants.
DOCKET NO. A-2325-08T2.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 2010.
Decided June 23, 2010.
*1073 Joanna L. Crosby, Newark, argued the cause for appellant (Tressler, Soderstrom, Maloney & Priess, attorneys; James A. Knox, Jr., of the Illinois bar, admitted pro hac vice, Chicago, IL, and Gregg H. Aronson, Newark, on the briefs).
James P. Lisovicz, Morristown, argued the cause for respondents (Coughlin Duffy, attorneys; Mr. Lisovicz, of counsel and on the brief; Conor T. Mulcahy, on the brief).
Before Judges SKILLMAN, FUENTES and GILROY.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal requires us to determine the scope of coverage provided by an additional insured endorsement of an insurance policy, which provides that such coverage "shall be excess over any other insurance," where an additional insured had primary coverage under its own policy. We are also required to determine whether the terms of an additional insured endorsement, which provides only excess coverage, should be construed to provide primary coverage if the subcontractor-policyholder has agreed with a general contractor to obtain additional insurance coverage that is primary.
We conclude that an additional insured endorsement that provides coverage that is "excess over any other insurance" should be construed in accordance with its plain language to provide only excess coverage to an additional insured that had primary coverage under its own policy. We also conclude that a subcontract that requires the named insured-subcontractor to obtain primary coverage for the additional insured-general contractor cannot be construed to expand the scope of coverage provided under an additional insured endorsement if the issuer of the policy was not provided notice of the subcontract's terms.
Plaintiff Jeffrey M. Brown Associates, Inc. (Brown) is a general contractor. Plaintiff Zurich American Insurance Co. (Zurich) issued a commercial general liability policy to Brown with a policy limit of $1 million per occurrence. The sections of that policy relevant to this appeal, which provided primary coverage to Brown, are quoted later in this opinion.
On July 30, 2004, Brown entered into a subcontract with CAP Services, Inc. (CAP), which is not a party to this appeal, to demolish a structure on the site of a condominium project Brown was building. This contract included a provision which stated:
[CAP] shall procure and maintain, at its own expense, insurance.... [CAP's] policy must name Owner and [Brown] as additional insureds and shall be the primary policy.

[Emphasis added.]
When this subcontract was entered into, CAP had a commercial general liability policy with a $1 million policy limit issued by defendant Interstate Fire & Casualty Co. (Interstate). That policy contained an additional insured endorsement which provided coverage that was "excess over any other insurance."
Under a subcontract with CAP, defendant Regional Scaffolding & Hoisting Co. (Regional) constructed a sidewalk bridge. On September 18, 2004, which was within the policy periods of both the Zurich and Interstate policies, the bridge collapsed on top of three CAP employees, causing them serious personal injuries. The CAP employees[1] brought personal injury actions *1074 against Regional;[2] John Butler, who was a subcontractor of Regional; and Brown. This appeal only involves the insurance coverage available to Brown for the defense of those actions and indemnification for any liability Brown might incur.
Initially, Zurich undertook to provide a defense to Brown. However, Zurich and Brown later took the position that Interstate was responsible, under the additional insured endorsement of the policy Interstate issued to CAP, to defend Brown and pay any judgments that may be entered against Brown in the underlying personal injury actions.
When Interstate failed to provide the requested coverage, Zurich and Brown brought this declaratory judgment action. The case was brought before the trial court by cross-motions for summary judgment. In an oral opinion, the court concluded, based on the previously quoted provision of the subcontract between Brown and CAP, that the Interstate policy provided primary coverage to Brown for the underlying personal injury actions. Accordingly, the court granted plaintiffs' motion for summary judgment and entered an order requiring Interstate to take over Brown's defense and pay any judgment entered against Brown.[3] The court subsequently ordered Interstate to pay the attorneys' fees and costs previously incurred in defending Brown in the personal injury actions and in pursuing this declaratory judgment action. Interstate appeals from those orders, and we now reverse.
We first consider whether the additional insured endorsement of the policy Interstate issued to CAP provided primary coverage to Brown even though that endorsement stated that the coverage provided an additional insured "shall be excess over any other insurance" and the policy Zurich issued to Brown provided primary coverage. We next consider whether the scope of coverage provided to Brown by the additional insured endorsement of the policy Interstate issued to CAP was modified by the provision of Brown's subcontract with CAP that required CAP to obtain an additional insured endorsement that provided primary coverage. Finally, after deciding both of these questions adversely to plaintiffs, we consider whether plaintiffs are nevertheless entitled to an award of the attorneys' fees they incurred in pursuing this declaratory judgment action.

I.
In interpreting "the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route." Chubb Custom Ins. Co. v. Prudential Ins. Co., 195 N.J. 231, 238, 948 A.2d 1285 (2008). "If the language is clear, that is the end of the inquiry." Ibid. "[A] court may look to extrinsic evidence as an aid to interpretation" only if there is ambiguity in the language of the insurance policy. Ibid.
With these general principles in mind, we turn to the specific provisions of the Interstate and Zurich policies that provided coverage to Brown for the claims asserted in the underlying personal injury actions. The additional insured endorsement in the Interstate policy issued to CAP stated:

*1075 In consideration of the premium charged:
The following provision is added to Section II, PERSONS INSURED, of the Comprehensive General Liability Coverage Part:
(f) any entity the Named Insured is required in a written contract to name as an insured (hereinafter called Additional Insured) is an insured but only with respect to liability arising out of work performed by or on behalf of the Named Insured for the Additional Insured. The insurance afforded by this provision shall be excess over any other insurance.

[Emphasis added.]
Another section of the Interstate policy stated:
When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."
The relevant sections of the policy Zurich issued to Brown stated:
4. Other Insurance
If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
b. Excess Insurance
This insurance is excess over:
. . . .
(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.
[Emphasis added.]
It is clear on the face of these policies that the additional insured coverage Interstate provided under the policy issued to CAP was "excess" to any other coverage available to an additional insured such as Brown, and that the coverage Zurich provided under the policy issued to Brown was "primary" unless Brown had "other primary insurance available to [it,]" which Brown did not have. Therefore, the coverage Zurich provided to Brown made Interstate's coverage of Brown under its additional insured endorsement "excess."
As we explained in W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co., 407 N.J.Super. 177, 970 A.2d 382 (App.Div. 2009), the part of the Interstate additional insured endorsement that makes that coverage excess to any other coverage available to an additional insured such as Brown is what is commonly referred to as an "excess other-insurance clause":
An excess policy provides protection to an insured for liability for an amount above the maximum coverage provided by the primary policy. However, there is a distinction between a primary insurance policy containing an excess other-insurance clause and a true excess policy. A true excess policy is conditioned on the existence of a primary policy; on the other hand, a primary policy with an excess other-insurance clause is a device by which a primary insurer seeks to limit or eliminate its liability where another primary policy covers the risk, thus making it secondarily liable.

*1076 . . . An excess other-insurance clause seeks to make an otherwise primary policy excess insurance should another primary policy cover the loss in issue. Thus, where one policy has an excess other-insurance clause and another policy on the same risk does not, the former policy will not come into effect until the limits of the latter policy are exhausted.

[Id. at 196-97, 970 A.2d 382 (emphasis added; citations omitted).]
We held in W9/PHC Real Estate that such an excess other-insurance clause should be interpreted and applied in accordance with its plain language. Id. at 202-03, 970 A.2d 382.
The Interstate policy had an "excess other-insurance clause" but the Zurich policy, which insured "the same risk, [did] not." Id. at 197, 970 A.2d 382. Therefore, "the [Interstate] policy [did] not come into effect until the limits of the [Zurich] policy [were] exhausted." Ibid.
Zurich places heavy reliance upon Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., 28 N.J. 554, 147 A.2d 529 (1959), which holds that if two policies both include an excess clause, the clauses are "mutually repugnant" and the insurers must share equally in defense and indemnification costs. Id. at 562, 147 A.2d 529. However, the two insurance policies involved in Cosmopolitan both contained "other insurance" clauses, which stated that the coverage provided was "excess insurance over any other valid and collectible insurance." Id. at 556-57, 147 A.2d 529. Under these circumstances, the Court concluded:
Since neither policy by its terms is a policy of "primary" insurance, neither can operate as a policy of "excess" insurance. The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses.
[Id. at 562, 147 A.2d 529.]
In contrast to Cosmopolitan, Zurich's policy expressly stated that the coverage it provided Brown was "primary," except under certain specified circumstances, including where "other primary insurance" was available to Brown, and the Interstate additional insured endorsement expressly stated that the coverage it provided was "excess over any other insurance." Therefore, unlike in Cosmopolitan, there was no "mutual repugnance" between the coverage provisions of the Zurich policy, which was "primary," and the Interstate policy, which was "excess" over any other insurance available to an additional insured. Instead, as in W9/PHC Real Estate, only the Interstate policy had an "excess other-insurance clause," and thus that provision prevailed over the "other insurance" provision of the Zurich policy.

II.
We turn next to Zurich's argument that the coverage provisions of the Interstate policy must be construed in light of the subcontract between Brown and CAP, under which CAP agreed to procure additional insured coverage for Brown that was "primary."
In considering this argument, the sequence of relevant events is significant. CAP obtained its general liability policy from Interstate on June 1, 2004, two months before it entered into the subcontract with Brown. Although this subcontract obligated CAP to provide primary additional insured coverage for Brown, *1077 CAP never notified Interstate it had entered into a subcontract with Brown, and Interstate never issued a certificate of insurance to Brown or other verification that it had provided the coverage required by the subcontract. Thus, Interstate was not privy to the contractual relationship between Brown and CAP.
The additional insured endorsement to the policy Interstate issued to CAP was a self-contained provision that specifically described the scope of the coverage provided without reference to any other document. It stated that the coverage was limited to "liability arising out of work performed by or on behalf of the Named Insured for the Additional Insured" and that the coverage "shall be excess over any other insurance." Interstate's policy did not undertake to provide CAP with coverage for whatever additional insured coverage obligation CAP might agree by contract to provide. Nor did the Interstate policy contain any provision requiring CAP to notify Interstate of its contractual undertakings, thus providing Interstate with the opportunity to adjust the premium to reflect any additional risks it might assume.
Zurich places heavy reliance upon County of Hudson v. Selective Insurance Co., 332 N.J.Super. 107, 752 A.2d 849 (App.Div. 2000), in which the issue was whether an additional insured endorsement in a liability policy issued to a general contractor hired to perform work in a Hudson County courthouse provided coverage to the County for a claim by an employee of a potential subcontractor who slipped and fell while at the courthouse seeking information to prepare a bid. Id. at 110, 752 A.2d 849. The additional insured endorsement provided coverage to the County for "liability arising out of [the general contractor's] work for [the County]." Ibid. (emphasis added; internal quotation marks omitted). The court concluded that the coverage provided to the County under this endorsement extended to the slip and fall accident. Id. at 115-16, 752 A.2d 849. In reaching this conclusion, the court relied primarily upon the expansive interpretation generally given to the phrase "arising out of" in construing the "arising out of `your work'" language of the endorsement. Id. at 114, 752 A.2d 849. In addition, the court ruled that the broad terms of the County's contract with the general contractor gave the County a reasonable expectation of "coverage essentially in conformity with the requirements of the contract." Id. at 117, 752 A.2d 849. However, the court also stated that "even if [the insurer] did not know the County's exact contractual requirements, [the insurer] could reasonably anticipate that [the general contractor] would use subcontractors to perform its work and that such subcontractors would send representatives to the worksite in preparation for submitting their bids." Ibid.
Thus, Hudson does not stand for the proposition that the express provisions of an additional insured endorsement of an insurance policy may be overridden by the language of the contract between the named insured and a party insured under the additional insured endorsement. Instead, Hudson only indicates that such a contract may be considered in interpreting the language of an additional insured endorsement whose meaning is not self-evident,in that case, "arising out of [the general contractor's] work."
In this case, there is no ambiguity or uncertainty in the meaning of the Interstate additional insured endorsement that the subcontract between Brown and CAP can aid in resolving. Therefore, Zurich and Brown cannot rely upon that subcontract to require Interstate to provide a broader scope of coverage to Brown than is provided under the plain language of *1078 Interstate's additional insured endorsement.
Zurich also relies upon our opinion in Pennsville Shopping Center Corp. v. American Motorists Insurance Co., 315 N.J.Super. 519, 719 A.2d 182 (App.Div. 1998), certif. denied, 157 N.J. 647, 725 A.2d 1128 (1999), which held that a shopping center tenant's insurance policy did not provide coverage to the owner of the shopping center for a claim by a person who slipped and fell in the parking lot. Id. at 523, 719 A.2d 182. The lease obligated the tenant to indemnify the landlord for any liability for damages occurring on the demised premises and obtain additional insured coverage for that obligation. Id. at 521, 719 A.2d 182. However, the lease required the landlord to maintain the common areas including the parking lot. Id. at 522, 719 A.2d 182. In concluding that the tenant's policy did not provide coverage to the landlord for a slip and fall accident in the parking lot, the court stated:
Under the terms of the lease in this case, tenant bore responsibility only for damages incurred on the demised premises. Its undertaking to name landlord as an additional insured must be taken to be coextensive with the scope of tenant's own liability. While it is axiomatic that policies of insurance are to be construed in favor of the insured and that interpretations of policy language favoring coverage are preferred, the question whether a party is insured at all may be a separate matter susceptible of resolution by reference to any relevant matter such as an underlying contract, here the lease agreement, which clarifies the intendments of the parties in apportioning responsibility and providing for insurance coverage.
[Id. at 523, 719 A.2d 182 (citations omitted).]
Thus, the court in Pennsville relied upon the lease in concluding that the additional insured endorsement in the tenant's policy only provided coverage to the landlord for any claim arising out of an accident occurring on the demised premises. Although the court did not quote the additional insured endorsement in the tenant's policy, the language of that endorsement was presumably ambiguous. Therefore, the court resorted to the terms of the lease to resolve the ambiguity, which is an appropriate use of extrinsic evidence in construing an insurance policy. See Chubb Custom Ins., supra, 195 N.J. at 238, 948 A.2d 1285.
In contrast, there is no ambiguity in the additional insured endorsement of the policy Interstate issued to CAP. Instead, that endorsement unequivocally states that the coverage it provides "shall be excess over any other insurance." Therefore, the contract between Brown and CAP, to which Interstate was not a party, cannot be relied upon by Zurich and Brown to provide coverage that conflicts with the plain language of the Interstate policy.
This conclusion is supported by decisions in other jurisdictions. See, e.g., Transp. Indem. Co. v. Home Indem. Co., 535 F.2d 232, 235 (3d Cir.1976); Great W. Drywall, Inc. v. Interstate Fire & Cas. Co., 161 Cal.App.4th 1033, 74 Cal.Rptr.3d 657, 664-65 (2008); Carriers Ins. Co. v. Am. Policyholders' Ins. Co., 404 A.2d 216, 219-20 (Me.1979); Bovis Lead Lease LMB, Inc. v. Great Am. Ins. Co., 53 A.D.3d 140, 855 N.Y.S.2d 459, 463-65 (2008); Travelers Ins. Cos. v. Dickey, 799 P.2d 625, 628 (Okla.1990). The court in Bovis observed:
An insurance policy is a contract between the insurer and the insured. Thus, the extent of coverage (including a given policy's priority vis-à-vis other policies) is controlled by the relevant policy terms, not by the terms of the underlying *1079 trade contract that required the named insured to purchase coverage.
[855 N.Y.S.2d at 464.]
A leading treatise on insurance law reaches the same conclusion:
An insurer's duties are defined by what it contracted to do, not by what the insured contracted to do.
[2 Allan D. Windt, Insurance Claims & Disputes: Interpretation of Important Policy Provisions § 11.30 at 11-469 (5th ed. 2007).]
Our conclusion that plaintiffs cannot rely upon the subcontract between Brown and CAP to provide a broader scope of coverage to Brown than is provided by the plain language of Interstate's additional insured endorsement does not foreclose Brown from asserting a claim against CAP for breach of its contractual obligation to obtain primary additional insured coverage. In fact, we were advised at oral argument that Brown is already pursuing such a claim in other litigation.

III.
Rule 4:42-9(a)(6) authorizes an award of attorneys' fees "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." (Emphasis added). In view of our reversal of the summary judgment determining that the Interstate policy provides primary coverage to Brown for the claims in the underlying personal injury action, plaintiffs no longer qualify as "successful claimant[s]" and therefore the attorneys' fee awards in their favor must be reversed.
We reject plaintiffs' argument that they qualify as "successful claimant[s]" because this action was required to establish that the Interstate policy provided any coverage at all to Brown. The pleadings and statement of facts indicate that Interstate never disputed its obligation to provide coverage to Brown that was excess to the coverage provided by Zurich. The only dispute was whether that coverage was primary, co-primary or, as we have now determined, excess.
Accordingly, the summary judgment in favor of plaintiffs is reversed, and the case is remanded to the trial court to afford Interstate an opportunity to apply for an award of attorneys' fees.[4]
NOTES
[1] These employees and their spouses are the Pucillo, Griglios and Sopranos named as defendants in this action.
[2] Defendant Liberty Insurance Underwriters, Inc. provided insurance coverage to Regional. That coverage is not involved in this appeal.
[3] Interstate has settled the claims against Brown for $750,000. Consequently, if the coverage Interstate provided to Brown under the additional insured endorsement of the policy issued to CAP is excess only, as we conclude in this opinion, the $1 million per occurrence coverage provided under the policy Zurich issued to Brown would be sufficient to satisfy the full amount of the judgment.
[4] We express no opinion regarding Interstate's entitlement to such fees.